## SUSSKIND v. HALL et al.

### L. A. No. 33; March 23, 1896.

#### 44 Pac. 328.

Attachment—Mingling of Goods—Illegal Seizure.—The fact that goods of an attachment defendant are in the possession of a third person, who has mingled them with his own goods, and refuses to point them out, but claims ownership of all, does not warrant the seizure of goods, his title to which is unquestioned, and which are readily distinguishable from those of the attachment defendant.[1]

Attachment.—A Notice to an Officer of a Claim of Ownership of attached property is not vitiated by the statement therein that the claimant is the owner of all the property "except a portion owned by" another, who is not a party to the action.

APPEAL from Superior Court, Los Angeles County; J. W. McKinley, Judge.

---

[1] Cited in Hall v. Susskind, 120 Cal. 562, 53 Pac. 47, as part of the history of the case.

Action by Henry Susskind against J. C. Cline as sheriff, A. I. Hall, assignee, intervener. Judgment for the intervener and plaintiff appeals. Reversed.

Wells & Lee and Calvin Edgerton for appellant; Graff & Latham for respondents.

BELCHER, C.—In 1892, Mrs. L. M. Wagner was engaged in the jewelry business in the city of Los Angeles, the business being chiefly managed by her husband, J. B. Wagner. Her store was at No. 125 South Spring street, and in it she had been accustomed to keep a large stock of goods, consisting, among other things, of diamonds, watches, and jewelry. On September 28, 1892, she filed in the superior court of Los Angeles county her voluntary petition in insolvency, and was thereupon adjudged to be an insolvent debtor. Thereafter A. I. Hall was duly elected and qualified as assignee of the estate of the insolvent, and on November 2, 1892, the clerk of the court, by an instrument in writing, assigned and conveyed to him all the estate, real and personal, of the debtor. The assignee at once took possession of all the goods and property in said store, and held possession thereof till November 16, 1892, when, under an order of the court, he sold the same at public auction to Henry Susskind, the plaintiff herein, he being the highest and best bidder, for the sum of $7,100. The property sold consisted of a great variety of articles, including the fixtures and a safe, of which a list or inventory is presented, covering about thirty-three pages of the transcript. The purchase price was paid and the sale was reported to and confirmed by the court. Susskind immediately took possession of the property purchased, obtained a new lease of the store, and thereupon commenced and thereafter continued the business of selling such goods and of buying and selling other goods of a similar character, until July 26, 1893. On the last-named day all the goods and property then in the store were seized and taken possession of by J. C. Cline, the sheriff of Los Angeles county, as the property of L. M. Wagner, the insolvent, under a writ of attachment issued in an action commenced by M. Wunsch et al. against her in the superior court of that county. Susskind on the same day notified the sheriff that the property taken was his, and demanded a return thereof, but his demand was refused.

He thereupon commenced this action to recover the possession of said property or the value thereof, alleged to be $20,000, and damages.

The property sought to be recovered is described in the complaint as "a stock of jewelry consisting generally of various articles of gold and silver and plated jewelry, watches, chains, ornaments, also a lot of silverware and plated silverware, lot of fixtures, one safe, lot of diamonds and other precious gems, lot of money, lot of jeweler's tools and implements, shelving, counters, clocks, all situate and contained in that certain store and premises in the city of Los Angeles known and designated by city number 125 South Spring street." The sheriff answered, denying, for want of information or belief upon the subject sufficient to enable him to answer the allegations of the complaint, that on the twenty-sixth day of July, 1893, or at any other time, plaintiff was the owner, or in possession, or entitled to the possession, of the goods and chattels described in his complaint, or that he, the defendant, wrongfully took the said goods and chattels from the possession of the plaintiff, or unlawfully withheld the same from the plaintiff; and alleging that he took the said property under and by virtue of a writ of attachment, as hereinbefore stated. On the same day this answer was filed, A. I. Hall, the assignee of the insolvent's estate, asked and was permitted to intervene in the action. In his complaint in intervention he set up the facts of the insolvency of Mrs. Wagner, her voluntary petition in insolvency, his election and qualification as assignee, the assignment of the estate to him by the clerk of the court, and his taking possession, as such assignee, of all the property of the estate that he was then able to find, his settlement of the estate and final discharge, as such assignee, on May 24, 1893, and the vacation and setting aside of that discharge by an order of the court on September 1, 1893. He then alleged: "That the said Henry Susskind, before the said discharge of said intervener as such assignee, conspired with said insolvent and J. B. Wagner, her husband, to secrete and conceal a portion of said insolvent estate, consisting of diamonds, watches and jewelry, to prevent the same from coming into the possession of said intervener as such assignee, a particular description of which property so concealed is unknown to said intervener, but is known to the plaintiff, Henry Susskind; and

said insolvent did secrete and conceal said property; and Henry Susskind afterward received and took possession of said concealed property, knowing that it was a part of said insolvent's estate at the time of filing her petition in insolvency, and that the same had not been delivered by said insolvent to her said assignee. That the said intervener did not know that said property, or any part thereof, had been concealed, or that said defendant had taken possession thereof, or had disposed of any part thereof, until after the discharge of the intervener as assignee of said insolvent's estate. That the property was taken by the sheriff under a writ of attachment, as before stated, and was still held by him, a schedule of the property taken being appended. That the said stock so taken by virtue of said writ was a part of the estate of said insolvent debtor concealed and withheld by her from said assignee. That said Henry Susskind, for the purpose of defrauding said estate, is wrongfully claiming to be the owner of and entitled to the possession of said property so taken and held by said J. C. Cline as sheriff, but said Henry Susskind has no right, title, or interest therein." And the prayer was that the intervener, as assignee of the insolvent's estate, have judgment for the possession of said property. The plaintiff answered the complaint in intervention, denying all of its material averments.

The case was tried without a jury, and, among other things, the court found: "That prior to the filing of said insolvent's petition in insolvency a portion of said insolvent's estate, consisting of diamonds, watches and jewelry, was secreted so as to prevent the same from coming into the possession of said intervener as such assignee, and to prevent the same from being distributed among said insolvent's creditors by such intervener as such assignee. That the plaintiff, after the secreting and concealing of said goods, and knowing that said goods had been secreted and concealed, and for the purpose of preventing the same from coming into the possession of said assignee, received and took possession of said concealed property, and, after selling a portion thereof, retained possession of the remainder thereof" until July 26, 1893, "when the said property was taken by the defendant as the sheriff of said county, by virtue of said writ of attachment, at which time they were so mixed and confused by said plaintiff with other goods that they were not distinguishable from them;

and plaintiff neglected and refused to point out and distinguish in said stock taken by said sheriff by virtue of said writ of attachment the goods owned by him prior to said confusion and mixing therewith of said diamonds, watches and jewelry concealed and secreted by said insolvent, and also failed and neglected and refused to point out and distinguish the said watches, diamonds and jewelry so secreted and concealed by said insolvent, and mixed and confused by him with said other goods. That plaintiff, in taking and retaining possession of said stock of diamonds, watches and jewelry, was acting with said insolvent in the secreting, concealing and withholding said diamonds, watches and jewelry, for the purpose of defrauding said estate, and preventing the said property from coming into the hands of said intervener, and from being distributed among the creditors of said insolvent. That plaintiff was not, at the time of the taking by the defendant of said diamonds, watches, jewelry and fixtures, the owner of, or entitled to the possession of, the property described in his complaint or in his notice, and is not now the owner thereof, or entitled to the possession thereof." It was ordered "that judgment be entered herein in favor of the intervener for the possession of the property described in plaintiff's complaint, and in favor of defendant against plaintiff for his costs." Judgment was accordingly so entered, from which, and from an order denying his motion for a new trial, plaintiff appeals.

The findings above quoted are assailed by the appellant as not justified by the evidence, and numerous rulings of the court upon the admission of evidence are specified, and urged as errors in law which call for a reversal. The statement on motion for new trial, as found in the transcript, consists of about four hundred printed pages. To state the evidence intelligibly, and to review the rulings complained of, would require a very extended opinion, and, in view of the conclusion reached upon another point, we have deemed it unnecessary to attempt to do so. It is undoubtedly well-settled law that if two owners of goods or chattels of a similar character mix and intermingle them together in such a manner that they are not distinguishable, and if, under a writ of attachment or execution against one of the owners, all of the goods or chattels so mingled are taken by the sheriff as his property, the burden is upon the other owner to point out and

designate to the sheriff the particular goods or chattels which are his, and until he does so he cannot maintain an action against the officer to recover the portion which he claims: Wellington v. Sedgwick, 12 Cal. 469; Wade on Attachments, sec. 134. But this rule does not apply if the goods or chattels are plainly and easily distinguishable: Queen v. Wernwag, 97 N. C. 383, 2 S. E. 657. For example: If A had a band of sheep, and also horses or mules in the same pasture, and if with his consent B had been permitted to mix and intermingle his own sheep with A's, so that they were not distinguishable, and if then, under a writ of attachment against B, the sheriff should seize all the sheep and horses or mules as the property of the latter, there could be no pretense that the rule as to confusion of goods would have any application except as to the sheep. And in such a case, if A should bring an action against the sheriff to recover possession of all the property seized, he could not be defeated as to the horses or mules because he did not, before commencing suit, point out to the sheriff the particular sheep which were his. Here it appears that the plaintiff purchased at the assignee's sale and paid for a large stock of goods, consisting of a great variety of articles, and no question is made as to his title to all the goods so purchased. He afterward continued the business, and purchased and paid for other goods. At the time of the attachment the stock of goods in his store was of the value of $20,000, as the court found. Of these goods many articles, as shown by the schedule—a large majority in number—were as distinguishable from diamonds, watches and jewelry as would be a horse from a sheep. For instance, there were showcases on counters, wall cases, mirrors, desks, tables, chairs and stools, clocks, opera and field glasses, silverware, table and tea spoons, knives and forks, a letterpress, a stepladder, a safe, gold-headed canes, a sack of gold coin containing $840, etc. Now, conceding that, with the knowledge and consent of the plaintiff, and for the purpose stated, there had been brought into his store, and mingled with his goods of a like character, so that they could not be distinguished, diamonds, watches and jewelry which still belonged to the estate of the insolvent—a fact which plaintiff positively denied—still the sheriff was not authorized to seize all the other goods which were distinguishable, and in doing so he was clearly a trespasser. The notice to the sheriff was

sufficient to meet the requirements of sections 549, 689, of the Code of Civil Procedure, as amended in 1891. It stated that the plaintiff claimed and was the owner of all the property levied upon, "except a portion owned by Geo. L. Bannister," but that exception did not vitiate it. There is no question here as to the portion owned by Bannister. It follows that the court clearly erred in adjudging that the intervener, as assignee of the insolvent, was entitled to the possession of all the property described in the plaintiff's complaint; and the judgment and order appealed from should therefore be reversed and the cause remanded for a new trial.

We concur: Britt, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded for a new trial.