[L. A. No. 286.   Department Two.—April 9, 1898.]

A. J. HALL, Assignee, etc., Respondent, v. HENRY SUSSKIND, Appellant.

ACTION BY ASSIGNEE OF INSOLVENT—FRAUD—CIRCUMSTANTIAL EVIDENCE.— In an action by an assignee in insolvency to recover the value of property of the insolvent debtor, alleged to have been fraudulently secreted and concealed by the insolvent and her husband, who was manager of her business, to prevent the property from coming into the possession of the assignee, and to have been converted and sold by the defendant with knowledge of such concealment, the fraudulent secretion, and the conversion of the property with knowledge of its concealment, may be proved by circumstantial evidence. The evidence reviewed, and held sufficient to warrant a recovery by the assignee.

ID.—ESTIMATE OF EVIDENCE—FAILURE TO EXPLAIN POSSESSION.—Under section 2061 of the Code of Civil Procedure, evidence is to be es-

timated not only by its intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and the other to contradict; and where the evidence points to the fraudulent concealment of a very large part in value of the insolvent's stock in trade prior to the filing of the petition, and shows that the similar stock in trade of the defendant and sales thereof were largely augmented from some undisclosed source, and included goods identified as having been purchased by the insolvent, it being an easy matter for the defendant to prove whether they were legitimately obtained and how they were so obtained, and difficult for the plaintiff to prove the contrary, the failure of the defendant to offer any proof upon the subject, justified unfavorable inferences against him, that the sale made by him included goods surreptitiously withheld from the assignee.

ID.—DESCRIPTION OF PROPERTY—CERTAINTY.—No such degree of certainty in the description of the property converted as will identify the particular goods concealed and converted is required, when from the dispersion of the goods in the usual course of retail traffic, and other difficulties apparent from the evidence, identification was virtually impossible to the plaintiff.

ID.—APPEAL FROM NEW TRIAL ORDER—DEFECTIVE COMPLAINT NOT REVIEWABLE.—If the complaint was defective in failing to show why the property was not more specifically described therein, such defect cannot be reviewed on appeal from an order denying a new trial.

ID.—AMOUNT OF SALES.—The amount of sales made by the defendant of goods purchased by the insolvent, being peculiarly within the knowledge of the defendant, and difficult to be ascertained by the plaintiff, the defendant, upon failing to make any proof thereof, cannot complain of any fair deduction as to such value from the estimates before the court.

NEW TRIAL—STATEMENT—INSUFFICIENT SPECIFICATIONS.—A specification of errors in a statement on motion for a new trial that they are "pointed out and designated in the foregoing transcript by exceptions Nos. 1, 2, 3, etc., to 25, and the court erred in each of its said rulings," is not such a specification of particular errors as the statute requires, and is especially defective where it appears that the exceptions are not numbered in the transcript.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion.

Wells & Lee, and Calvin Edgerton, for Appellant.

M. L. Graff, and Graff & Latham, for Respondent.

BRITT, C.—This case in a different phase was before the court on a former appeal. (*Hall v. Susskind,* 109 Cal. 203.)

Plaintiff sues as assignee in insolvency of one L. M. Wagner, who, prior to her insolvency, was engaged in business as dealer in jewelry, diamonds, watches, silverware, etc., at the city of Los Angeles. In his complaint plaintiff charged that defendant conspired with said insolvent and her husband (one J. B. Wagner who was her managing agent) to secrete and conceal a portion of her estate, described as "consisting of diamonds, watches, and jewelry," to prevent the same from coming into the possession of the assignee; that the insolvent did conceal property not exempt by law; that the defendant took possession of said concealed property knowing it to be part of the insolvent's estate, converted the same to his own use, and sold a portion thereof of the value of thirty thousand dollars. The court found among other things that after said J. B. Wagner, acting on behalf of said insolvent, had concealed and secreted part of her estate—described as in the complaint—the defendant, with knowledge of such concealment, and that the property concealed was part of the insolvent's estate, took possession of the same and sold a portion thereof for cash, between November 16, 1892, and July 26, 1893, and that the value of the goods thus sold was fifteen thousand dollars—for which sum plaintiff had judgment.

Defendant's appeal from the judgment was dismissed. On the appeal from the order denying a new trial the main question made is whether the evidence sustained the finding of fraudulent conversion by defendant. The evidence was mostly circumstantial; it tended to show that Mrs. Wagner's stock in trade in the month of March, 1892, was worth from sixty thousand to seventy thousand dollars; in July, 1892, it was valued at fifty thousand dollars; on September 22, 1892, the same was seized under a writ of attachment, and a few days later, on September 28th, she filed her petition in insolvency; the goods she then had in stock were worth perhaps ten thousand dollars, though there were estimates of witnesses thereon at considerably less than that sum; and on November 16, 1892, plaintiff, as assignee of said insolvent, sold the same at public auction to the defendant for the sum of seven thousand one hundred dollars. Defendant received possession of the goods thus purchased, and embarked in the same business as that previously

conducted by the insolvent and at the same stand; he was as-
sisted therein by said J. B. Wagner, though in what capacity is
not clear. Between November 16, 1892, and July 26, 1893, de-
fendant made sales by auction and otherwise out of his stock
to the amount, the evidence tended to show, of about thirty-four
thousand dollars. On the date last mentioned all the goods then
in his possession were attached as the property of L. M. Wagner,
at the suit of one Wunsch and others, creditors of said L. M.
Wagner. Some particulars of that action are related in *Suss-
kind v. Hall*, 44 Pac. Rep. 328. At the time of this attachment
defendant had on hand goods of the estimated value of twenty-
five to thirty thousand dollars. In the stock then attached in
defendant's possession were found a considerable number of
valuable gold watches, also several elaborate pieces of diamond
jewelry, which were clearly identified as having been purchased
by said insolvent, and it seems carried in stock by her, prior to
her insolvency, but which were not included in the assets sur-
rendered to the assignee and sold by him to defendant. In
March, 1892, the diamonds held in the Wagner stock were worth
twenty thousand dollars or more; at the time of the insolvency
the value of the diamonds on hand (and thereafter sold with
the general stock by the assignee to defendant) was found to
be from thirteen to fifteen hundred dollars; but at the time of
the second attachment, in July, 1893, the diamond stock in the
hands of defendant was worth some fourteen thousand dollars.
The only additions shown to have been made to defendant's
stock by purchase between the time of the sale to him by the
assignee—November 16, 1892—and the time of the second at-
tachment—July 26, 1893—consisted of diamonds, watches, etc.,
to the amount of about four thousand six hundred dollars.

There was also evidence, received without objection, of state-
ments made by said J. B. Wagner shortly after the filing of his
wife's petition in insolvency, to the effect that in anticipation of
action by certain creditors, he had secreted goods to the value
of fully twenty-five thousand dollars. Some declarations of de-
fendant were given in evidence which tended to show an under-
standing between him and J. B. Wagner that when defendant was
repaid the money he had invested, with certain interest, the stock
should belong to Wagner; also that he had been so repaid prior to

the second attachment; he continued, however, in possession of the property and claimed to own the same. When that attachment was levied defendant was asked to open the strong box inside the safe belonging to the establishment; he refused, saying that it contained nothing but his private papers; it was opened a few days later and found to contain diamonds and jewelry worth two thousand five hundred dollars or more; it seems that all, or a large portion, of these goods were neither part of the stock sold by the assignee to defendant on November 16, 1892, nor shown to have been purchased by defendant elsewhere. When the case for plaintiff was closed defendant moved for a nonsuit, which being denied, he declined to introduce any evidence.

We think the nonsuit was properly denied, and that the evidence before the court—stated above in outline merely—justified the material findings. It is true, as said in a recent case here, that the presumption of law is always in favor of the fair dealing of the parties to a transaction, and that mere suspicion of fraud is not sufficient to overcome the presumption (*Levy v. Scott*, 115 Cal. 39); but it is also true, as virtually conceded in the same case, that fraud is commonly established by facts and circumstances which logically denote its existence rather than by direct proof of covinous contrivance—by circumstances which, taken together, lead to the inference of fraud rather than to that of honesty. "Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and the other to contradict." (Code Civ. Proc., sec. 2061.) Here it appeared that defendant purchased goods at a cost of less than twelve thousand dollars, and which, there was evidence to show, were worth not greatly more than that sum; he made sales amounting to thirty-four thousand dollars, and still had stock in his store worth above twenty-five thousand dollars; admitting that he sold at a profit of fifty per cent, which was said in the testimony to be a fair profit for the retailer over the wholesale price, it is still apparent that his stock was enormously augmented from some undisclosed source. If, now, the estimates and values given in evidence for plaintiff were false, it must have been easy for defendant, by production of his books or otherwise, to contradict them; if he received accessions

to his stock by purchase, gift, or consignment, in addition to those proved by plaintiff, or if the goods found in his stock which had been formerly owned by Mrs. Wagner and not surrendered by her to the assignee in insolvency, were introduced into his store without his knowledge, or had been in some way legitimately obtained, it was easy for defendant to prove these facts, and very difficult for plaintiff to prove the contrary. He offered no proof and cannot justly complain if the court viewed his neglect with suspicion, and gave to plaintiff the advantage of the unfavorable inferences which the evidence justified. (*Bode v. Lee,* 102 Cal. 583; *Newman v. Cordell,* 43 Barb. 448, 461; Bump on Fraudulent Conveyances, 4th ed., sec. 65.) These considerations suffice to answer the specific objections urged that the evidence showed no ownership of goods alleged to have been converted either in the insolvent or in the plaintiff as her assignee, and that it failed to show that defendant converted any such goods. That the evidence pointed to the fraudulent concealment of a very large part in value of the insolvent's stock in trade prior to the filing of her petition is clear and is not disputed by counsel; of course, any goods thus concealed belonged rightfully to the assignee. We may allow that defendant was not shown to have been either party or privy to such concealment in the first instance; but it was not essential to the making out of plaintiff's case to prove that he was; the important inquiry was whether defendant had knowingly converted to his own use property of the insolvent estate; many articles which, it was reasonable to infer, had been concealed by Wagner were found in defendant's possession, and he offered no explanation of this fact; the amount of his sales and the goods remaining in his stock unsold were out of all proportion to the investment he had made, and as to this incongruity he also remained silent; from these and the other facts developed it was a fair inference that the sales he had made included goods which had been surreptitiously withheld from the assignee.

It is claimed that there was no proof to sustain the court's finding of value of the goods converted—fifteen thousand dollars. But given the fact found, upon sufficient evidence as we hold, that defendant sold property belonging to the assignee, and it is apparent that the amount of such sales was peculiarly

within the knowledge of defendant and extremely difficult to
ascertain by plaintiff; defendant offering no proof, the court was
forced to deduce the conclusion of value from the estimates be-
fore it, and of this defendant ought not to complain, provided
the deduction was fairly made. We think it was; defendant's
sales had amounted approximately to thirty-four thousand dol-
lars; assuming—what is improbable—that all the goods shown
to have been purchased by him were again sold, and at a liberal
margin of profit, the proceeds thereof would still be short of the
total amount of sales by the sum of fifteen thousand dollars or
more. It is unnecessary to specify other elements which may
have entered into the estimate made by the court.

It is further urged that the evidence was fatally deficient in
that it did not identify the goods in question—that is, as we
understand the argument, describe with certainty sufficient for
identification the "diamonds, watches, and jewelry" mentioned
in the findings, and show: 1. The concealment; and 2. The con-
version of goods so identified. We do not think this degree of
certainty can be required in an action like the present, where
from the dispersion of the goods in the usual course of retail
traffic, and other difficulties apparent in the evidence, identifica-
tion was virtually impossible to the plaintiff; in modern times,
the rule of the action of trover, invoked by defendant, has not
been considered hard and fast, but, on the contrary, as one
amenable to circumstances. Thus, at a period when more strict-
ness was required than now, trover was allowed for a "library
of books," without expressing what they were, "because to set
down the particular books would make the record too prolix."
(*Emery's case*, cited in *Elpicke v. Acton*, 1 Vent. 114); also for a
" parcel of diamonds; " ( *White v. Graham*, 2 Strange, 827. And
see *Bode v. Lee*, 102 Cal. 590, pl. 4; *Seligman v. Armando*, 94
Cal. 314; *First Nat. Bank v. Montgomery*, 70 Miss. 550; *Taylor
v. Wells*, 2 Saund. 74, note.) Possibly, the complaint was de-
fective, as contended by defendant, in failing to show why the
property was not more specifically described therein, but de-
fects in the complaint are not reviewable on appeal from an
order denying a new trial (*Brison v. Brison*, 90 Cal. 323); the
finding followed the description in the complaint and is sus-

tained by the evidence, which discloses also sufficient reason for the generality of the finding.

It is argued that the court erred in several rulings regarding the admission of evidence; the only specification of such errors contained in the statement on motion for new trial is that they are "pointed out and designated in the foregoing transcript by exceptions Nos. 1, 2, 3, etc., to 25, and the court erred in each of its said rulings." This was no more than to say that the court erred in the various rulings excepted to by defendant as shown in the transcript and can scarcely be regarded as such a specification of particular errors as the statute requires (Code Civ. Proc., sec. 659, subd. 3); moreover, we have been unable to find an exception in the transcript numbered in any manner. The order appealed from should be affirmed.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

            McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.