[Civ. No. 3967. Third Appellate District.—December 16, 1929.]

THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants, v. WILLIAM BABCOCK et al., Respondents.

Jess E. Stephens, City Attorney, W. B. Mathews, Floyd M. Hinshaw and Kenneth K. Scott for Appellants.

Sherman & Sherman and R. J. Gardner for Respondents.

PLUMMER, J.—This action was instituted to obtain a mandatory injunction requiring the defendants to remove certain buildings from a right of way belonging to the City of Los Angeles, upon which it had established, and was maintaining electrical transmission lines. The defendants had judgment, and the plaintiffs appeal.

The record shows that in 1916 the plaintiff, City of Los Angeles, became the owner of a right of way 120 feet in width, for the erection and maintenance of electric light and power transmission lines; that along the center of said right of way the city had erected, and for a number of years had been maintaining such lines; that the deed conveying a right of way to the city of Los Angeles was of record in the office of the county recorder of Los Angeles; that the deed of conveyance of said right of way provided that no buildings or other structure should be erected thereon, pastural, agricultural and mineral rights only being reserved. Subsequent to the acquiring of the easement and right of way herein mentioned the premises involved, together with other premises adjoining, were subdivided into city lots, the defendants named becoming owners of certain lots partly covered by the easement and right of way owned by the City of Los Angeles.

The judgment of the trial court was to the effect that the City of Los Angeles was estopped from demanding the removal of the buildings referred to in the plaintiff's complaint.

Upon this appeal a number of grounds for reversal are assigned and presented to this court for consideration, only one of which, however, needs to be mentioned, to wit, that the court erred in holding that the City of Los Angeles was estopped from demanding the removal of the buildings from its right of way over lots 58, 70 and 73 of tract No. 5552, or had ever acquiesced in the erection and maintenance thereof. If this holding is erroneous, then and in that case the judgment should be reversed, irrespective of any of the other assignments. An examination of the find-

ings will determine whether the assignment of error which we have quoted is tenable. Omitting all the preliminary matters contained in findings 1, 2, 3 and 4, relative to the City of Los Angeles being a municipal corporation and operating an electric transmission line, and the description of the right of way acquired in 1916, by the City of Los Angeles, we come to finding number 5 which sets forth that the deed of conveyance to the City of Los Angeles, for the right of way referred to, was recorded in the office of the county recorder of Los Angeles on the twenty-sixth day of June, 1916. Finding number 6 is to the effect that ever since the sixth day of June, 1916, the Board of Water and Power Commissioners has maintained, and now maintains and operates over said easement, electric wires for the transmission of electric energy to the City of Los Angeles, said wires carrying, at the time of the trial, approximately 110,000 volts of electricity; that the power line now existing on said easement is along the center line thereof. Finding number 7 is to the effect that the premises referred to had been subdivided into city lots, and that the easement covers a portion of said lots. Finding number 8 is in these words: "The court finds that the maintenance, use and occupancy of said buildings and structures upon plaintiff's easement prevent, and are a continuous and constant interference with the free, full and perfect use and enjoyment by plaintiffs of the rights and easements granted them by said deed, but that the use of said easement by the defendants has been acquiesced in by the plaintiffs since the erection of said buildings." Finding number 9 is to the effect that the plaintiffs, prior to the beginning of the suit, had not demanded the removal of said structures. Finding number 10 is to the effect that on May 7, 1923, the defendant Lulu Wilson entered into a contract for the purchase of lot 58, and in the year 1924, erected a garage thereon, and that on July 9, 1925, the defendant Lulu Wilson became the owner of said lot 58; that a residence erected upon said lot 58 projects 7.15 feet upon the easement and right of way of the plaintiff. Finding number 11 is to the effect that Jess Chenoweth is the owner of lot 70; that the buildings on said lot were erected in the year 1924; that a certain frame building on said lot projects 9.21 feet over and upon the easement and right of way of the plaintiff. Finding number

12 is to the effect that Charles E. Luring and Alice Luring are the owners of lot 73, and erected a residence and garage thereon in the month of February, 1923; that the buildings erected by the Lurings project from 14 to 24 feet over and upon the easement and right of way belonging to the plaintiff; that a garage erected by said defendants stands wholly upon the easement or right of way. Finding number 13 is to the effect that the buildings referred to do not constitute a fire hazard. Finding number 14 is as follows: "The court finds that during the erection of the buildings so erected and constructed by defendants upon said lots 58, 70 and 73 of Tract No. 5552, and continuously thereafter to the date of the filing of plaintiff's complaint, plaintiff's agents and employees regularly patrolled the said right of way approximately once each week." Finding number 15 is to the effect that the City of Los Angeles, in erecting and maintaining electrical transmission lines, is acting in a proprietary capacity. Finding number 16 is to the effect that Raymond Luring and Ina M. Luring are the owners of lot 71 of the tract referred to, subject to the easement belonging to the City of Los Angeles. Finding number 17 is to the effect that Charles E. Luring and Alice Luring are the owners of lot 73, subject to the permanent easement and right of way belonging to the City of Los Angeles. Finding number 18 is to the effect that Jess Chenoweth is the owner of lot 70, subject to the permanent easement belonging to the City of Los Angeles. From these findings the court drew the following conclusions of law: That plaintiffs are estopped from demanding the removal of the now existing buildings and structures situate upon lots 58, 70 and 73 of said tract.

The latter portion of finding number 8 to the effect that the use of the easement belonging to the city has been acquiesced in is based simply upon testimony to the effect that the defendants had not been notified to remove the buildings from the right of way belonging to the City of Los Angeles, and further testimony to the effect that agents and employees, or rather, to the effect that employees patrolled the right of way approximately once a week to observe the condition of the electric wires and transmission lines erected on the same. There is not a word of testimony in the record to the effect that these agents or em-

ployees of the city knew or had any knowledge that the buildings erected by the defendants trespassed upon the easement or right of way belonging to the city, or ever said a word to any of the defendants relative to the buildings involved, or that any of the city employees knew anything whatever of any of the acts of the defendants, or that the defendants relied upon a single act or word of any of the persons patrolling the power and transmission lines belonging to the city.

Upon the findings which we have set forth, the court drew the conclusion that the city was estopped, and entered judgment on the theory that the city was estopped. It requires only a reading of the findings to show that there is not a single element of estoppel shown in this case. While the respective parties to this action have submitted a voluminous list of authorities, and by way of briefs made somewhat extensive arguments, it is unnecessary to follow the same. The findings are absolutely devoid of anything showing, or tending to show that the defendants relied upon a single act, declaration or representation of any of the plaintiffs, or any of their agents. The only mention of anything in the case, which does not amount to a scintilla of evidence, is an allegation in the answers of some of the defendants to the effect that the city issued a permit to erect buildings on a portion of the lots involved, no mention or allegation being made as to the portion of the lots upon which the buildings were to be erected. There is no finding to the effect, nor has our attention been called to any allegation in the pleadings or testimony in the transcript showing that the defendants, or any of them, have changed their position by reason of any act, thing or conduct on the part of the plaintiffs, or any of their agents. There is no mention in the findings, no allegation in the pleadings, and no testimony showing that the defendants, or any of them, ever made any effort to ascertain the exterior lines of the easement or right of way belonging to the City of Los Angeles, nor any finding, allegation or testimony in the transcript that the defendants, or any of them, were ever misled as to such exterior boundaries. There is no finding, nor is there any allegation in the pleadings, or testimony in the transcript showing that the defendants could not, by reasonable diligence, have ascertained the extent and

exterior boundaries of the right of way belonging to the city. The poles and transmission lines were in place years before any of the defendants became interested in the three lots in question, and were there at the time the defendants, respectively, became the owners of the several lots, as heretofore stated. We need only to cite the general rules as to equitable estoppel set forth in 10 Cal. Jur., beginning on page 624, and 21 C. J. 1119, and the text following the pages of the respective volumes which we have cited, to show that there is nothing in the findings in this case to support the judgment, and that the court was in error as alleged by the plaintiffs. In 10 Cal. Jur. 626, the elements of estoppel are thus stated: "The vital principle of equitable estoppel is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he has acted. . . . In general, four things are essential to the application of the doctrine of equitable estoppel; first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct, to his injury." As we have said, there is not a word in the findings that the plaintiff, or any of its agents, were apprised of the trespass being committed by the defendants, nor is there a word in the findings to show that the city intended, by its conduct or by the conduct of any of its agents, that the defendants might erect buildings upon the easement or right of way belonging to the city. ▮ It may be that the defendants were ignorant of the exterior lines of the right of way belonging to the city, but as the conveyance to the city was on record, and had been on record for years prior to the acquiring of any of the lots or the erecting of any of the buildings by any of the defendants, they are presumed, as a matter of law, to have had such knowledge. As to "knowledge," we find the following on pages 636 and 637 of 10 Cal. Jur.: "It is an essential element of an estoppel by conduct that the party asserting it must be ignorant of the true state of facts and should have relied upon the representations or admission of the adverse

party. If he relies upon negligence as the basis of the estoppel, he must show that such negligence was the proximate cause of the deceit. He need, however, not be destitute of all possible means of knowledge of the facts, it being sufficient if he is destitute of convenient and ready means to that end. To warrant reliance, a representation must be such as would induce a reasonable man to act upon it. . . . He must show that he was misled by the conduct of the other party; that in reliance thereon, he was induced to do something which he otherwise would not have done." There is nothing in the findings to this effect. There is not a line in the pleadings, not a word in the transcript, and nothing in the findings to which our attention has been called showing that the defendants, or any of them, relied upon any act, statement or declaration of the plaintiffs, or of any of their agents. The facts, so far as the testimony shows and the findings show are to the effect that the defendants simply erected the building on the premises, and, we may add, without any reference to the right of way or easement belonging to the city. The defendants had a convenient and ready means of ascertaining the exterior lines of the easement or right of way belonging to the city. In 21 C. J. 1119, the general rules relative to equitable estoppel are thus stated: "In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts. It must have been made with knowledge, actual or constructive, of the facts. The party to whom it was made must have been without knowledge or the means of knowledge of the real facts. It must have been made with the intention that it should be acted upon, and the party to whom it was made must have relied on, or acted upon it, to his prejudice." There is nothing of the kind in the findings, and nothing in the pleadings or testimony called to our attention, sustaining any of these necessary elements of estoppel. And further, in the same volume, on page 1129, we find the following: "As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is, as a general rule, essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should have been also without convenient or

ready means of acquiring such knowledge." And further, on page 1130 of the same volume, it is stated: "A public record is an available means of information as to the question of title, and one who does not take advantage of it cannot claim estoppel against one who merely fails to furnish such information." All of these rules relative to estoppel which we have quoted are supported by an abundance of authorities, and these citations abundantly show that there is no escape from the conclusion that no judgment of estoppel is or can be supported by the findings in this case.

It follows, therefore, without further citation of authorities, that the judgment of the trial court must be, and the same is hereby, reversed.

Thompson (R. L.), J., and Finch, P. J., concurred.