[Civ. No. 8868. Second Appellate District, Division One.—June 12, 1935.]

D. A. GORMAN, Respondent, v. E. J. STEINKE, Appellant.

Doyle, Clark, Thomas & Johnson for Appellant.

John H. Burke for Respondent.

THE COURT.—Plaintiff sued for damages arising out of the alleged fraudulent representations of the defendant in the sale of an insurance agency business, and had judgment upon the verdict of a jury. The principal ground urged by the defendant on appeal from the judgment is that the evidence is insufficient to support the verdict.

The sale of the business was made in January, 1930, under a written contract executed after negotiations extending over several days. By the contract "the said E. J. Steinke agrees to set over to D. A. Gorman the good will of said insurance agency and to use his best efforts to place the said D. A. Gorman in profitable contact with all customers of said insurance agency and E. J. Steinke represents that he has not withheld any contract or understanding had with others or with salesmen, brokers and/or customers which would be prejudicial to the proper and profitable conduct of said insurance agency by D. A. Gorman and that all business, renewals and confidential data of said insurance agency belongs to said office and no salesman, broker or customer has any right, title or interest therein." In his complaint respondent alleged "that the said defendant did not use his best efforts to place the plaintiff in proper and profitable contact with all customers of said defendant and did not intend so to do at the time said promise was made so to do, and the statements of the defendant and the representations of the defendant that he had not withheld any contract or understanding had with others, or with salesmen, brokers and/or customers which would be proper and profitable to the conduct of said insurance business, and that all renewals, business and confidential data of said insurance business belonged to said defendant, and that no salesman, broker or customer had any right, title or interest therein, were false and fraudulent; . . . " The contract also provided that the appellant would not engage in the insurance business in Long Beach for a period of ten years, and in a second count of the complaint it is alleged that appellant violated that agreement and respondent has been damaged thereby. Only one verdict was returned, which was in general terms for the respondent in the sum of $5,000, and for the appellant in an amount of $136.08 on his cross-complaint for commis-

sions on new business he placed with the respondent after the sale.

Most of the controversy arises over the claim of the respondent that appellant represented· to him that practically all of the business of the agency was direct business, that is to say, secured from the insured directly and not through brokers, and that this was untrue. However, the evidence fails to support respondent's contention. Respondent testified that appellant represented to him that the gross premiums of the insurance agency had amounted to $180,000 in the previous year, and that this business produced $23,674 in commissions for the agency after paying all brokerage and commissions to which others were entitled. Some months after respondent purchased the business he had an audit made which showed that the commission income of the agency for the year was $22,875. Respondent testified that at the time of giving him the amount of commissions, appellant had stated that the bookkeeping was not quite up to date, and an annual audit was in progress, consequently tentative figures only could be given at that time. In view of these explanations by appellant, his figures were as accurate as could reasonably be required in representing the gross profits of the business.

It is difficult to see how even an untrue representation as to the amount of direct and brokered business could result in any damage to the buyer of the agency where the total commission income was correctly stated. The claim of respondent in this regard is based upon his assertion that the business secured from brokers and promised by the salesmen did not "belong" to the agency within the meaning of the contract. But he knew that appellant had salesmen employed, and he also knew that appellant accepted business from brokers. The amount of commission represented by appellant to have been secured by him on a total gross premium income of $180,000 must have told respondent, as an experienced insurance man, that a considerable portion of the business came from persons to whom appellant paid a portion of the commission. Under such circumstances the provision of the contract that the business belonged to the appellant must be construed in the light of the knowledge of both parties, and could only have been taken by the respondent to

mean that no person had any interest in the business which would reduce the amount of the commission below that represented, if the same persons did business with the insurance agency in the future in the same way they had in the past. There is no substantial evidence that all of the business of the agency was not owned by the appellant. On the other hand, the evidence shows that the appellant got exactly what he purchased, an insurance agency with a gross premium income of $180,000 and a commission income of $23,000. Under such circumstances there was no foundation for opinion evidence that the business was of less value than represented.

The further claim of the respondent that the appellant failed to assist him in keeping the business is without any substantial foundation.

Fraud must always be proved. It is never presumed and it is incumbent upon one relying upon fraud to establish it. There is here no evidence of fraud, nor any evidence from which fraud may even reasonably be inferred. "It is never presumed that a party has committed a fraud, and where fraud is alleged for the purpose of depriving him of a right it must be clearly made out. (Citing cases.) To establish fraud the evidence must be clear, satisfactory and convincing." (*Wolfe* v. *Severns*, 109 Cal. App. 476, 480 [293 Pac. 156].) Here the evidence not only fails to measure up to this standard, but, on the contrary, shows without contradiction that the representations made by the appellant were true.

The judgment is reversed.