[Civ. No. 1831. Fourth Appellate District.—July 8, 1937.]

ADELIA MAY RICE, Respondent, v. CALIFORNIA-WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Appellant.

Farnsworth, Burke & Maddox and James K. Abercrombie for Appellant.

J. A. Chase and M. C. Chase for Respondent.

MARKS, J.—This is an appeal from a judgment in favor of plaintiff in the sum of $1379.22, principal, and $220.72, accrued interest, on two identical policies of insurance, each a twenty-payment life in the sum of $2,500, issued on the life of Charles Gardner Rice, in each of which plaintiff was named as beneficiary. The policies were originally written on October 23, 1914, by the California State Life Insurance Company which was subsequently absorbed and its contracts assumed by defendant.

The second amended complaint contains two identically similar causes of action, each based on one of the two identi-

cally similar policies. The finding of fact on each cause of action are identical. In our discussion of the findings we will confine ourselves to those under the first cause of action as any other procedure would be unnecessarily repetitious.

The findings of fact pertinent to this appeal are as follows:

"It is true that Charles Gardner Rice kept and performed each and all of the conditions and provisions of said policy of insurance and paid all premiums required by the provisions of said policy to be paid, except the final or twentieth payment thereof, and the defendant by its conduct and by the conduct of its agents is estopped to deny that said policy was in full force and effect at the time of the death of said Charles Gardner Rice, or at any time by reason of the following facts, to-wit:

"That on or about the 13th day of November, 1933, the said Charles Gardner Rice at the Fresno branch office of the defendant offered and tendered payment of the said twentieth and final premium on said life insurance policy; that at said time and place an agent of said insurance company known as the cashier of the Fresno branch office of the said defendant falsely and fraudulently stated and represented to said Charles Gardner Rice that the sum of One Hundred Ninety-five and 73/100 Dollars ($195.73) was required to be paid to keep said policy in force and effect, when in truth and in fact under the provisions of said policy and the rules and regulations adopted by said company then in effect, the sum of one hundred and 80/100 dollars ($100.80) was the correct amount to be paid to keep said policy in force; or in the event a new loan was effected the sum of sixty-six and 24/100 dollars ($66.24) was a sufficient sum to pay to keep said policy in force; that said representation of said agent to the effect that the sum of One Hundred Ninety-five and 73/100 Dollars ($195.73) was required to be paid to keep said policy in force was false and untrue and was known to said agent to be false and untrue, and was wilfully and knowingly made solely for the purpose of deceiving the said Charles Gardner Rice and thereby inducing the said Charles Gardner Rice to fail to make payment of said premium on said policy of insurance within the time provided by the conditions of said policy in order that a forfeiture would occur under the provisions of said policy of insurance and thereby relieve said defendant from the obligation created by the issuance of said policy of insurance; that said Charles

Gardner Rice did not know said statement and representation of said agent was false or untrue, but believed the same to be true and so believing relied thereon, and solely by reason thereof failed to pay said twentieth and final annual premium of said policy within the time provided by the provisions of said policy.

"It is true that immediately after the time had elapsed within which said premium was required to be paid by the provisions of said policy an agent of defendant offered to accept the amount required to keep said policy in force on the making of a new loan, to-wit: the sum of sixty-six and 24/100 dollars ($66.24), on condition that said Charles Gardner Rice furnish proof that he, the said Charles Gardner Rice was then in condition of health acceptable to defendant; that said Charles Gardner Rice could not then furnish such proof as said agent well knew, but, nevertheless said Charles Gardner Rice tendered and offered to pay the said sum of sixty-six and 24/100 dollars ($66.24) which said agent of defendant then refused to accept but stated that by the conditions contained therein said policy had then lapsed by failure to make payment of said final or twentieth premium within the time required by its provisions."

The evidence discloses that Mr. Rice had made nineteen annual premium payments on each of his policies, the last of which were paid during the thirty-day grace period following October 23, 1932. At the time of making these last premium payments he had borrowed from defendant $1582.24 on each policy on the security of the policy. During the nineteenth year of each policy each total loan value was $1597.50. For several years prior to October 23, 1932, Mr. Rice had borrowed from defendant on the security of his policies. Each loan bore interest at the rate of six per cent per annum, payable annually in advance. During each of the several years prior to the payment of the nineteenth premiums Mr. Rice had paid his premiums and the interest on his loans by increasing his loans to about the full loan values for the ensuing policy year, applying the excess of the new loans over those of the prior ones on the premiums and interest due and by paying in cash the deficiencies due defendant. Mrs. Rice had signed each loan agreement and was fully advised as to the details of these transactions. Both insurance policies were in the possession of Mr. Rice.

Prior to October 23, 1933, defendant sent Mr. Rice the

usual written notices that on that date there would become due and payable to it $100.80 premium on each policy, and $94.93 interest on each loan, or a total payment of $391.46. It is admitted that these amounts were exactly and correctly stated in the notices and that they became due and payable by Mr. Rice on October 23, 1933.

On November 13, 1933, Mr. Rice went to the branch office of defendant in Fresno. He had available at that time about $300, but did not have sufficient money with which to pay his premiums and interest in full. He left the office without making any payment and made no payment prior to some time in December, 1933, at which time he signed an application for reinstatement and gave a field agent of defendant a check for $132.48. At that time he, with Mrs. Rice, signed two policy loan agreements for loans on each policy in the sum of $1720, the maximum policy loan value after the twentieth premium had been paid. The excess in the policy loans over those already made, together with the cash payment of $132.48 ($66.24 on each policy) would have been sufficient to pay the twentieth premiums on the two policies together with one year's interest on each of the new loans. As the two policies had lapsed on November 23, 1933, for nonpayment of premiums, Mr. Rice was required by their terms to pass a physical examination before he could be reinstated and the policies again brought to life. He failed to pass this examination, his applications for reinstatement were rejected and his check and the loan agreements were returned to him. Subsequently defendant sent Mr. Rice two checks, each in the amount of about $15 which represented the difference between the amount loaned on each policy and its surrender value at the time of its lapse. The checks were not cashed. Nothing further happened until the death of Mr. Rice on February 26, 1934, from a heart affliction. Mrs. Rice duly made proofs of loss, her claims were rejected and this action followed.

There is no dispute between the parties as to the evidence which we have thus far outlined. They are in sharp disagreement as to what happened during the visit of Mr. Rice to the branch office of the defendant in Fresno on November 13, 1933.

Defendant maintains that Mr. Rice came into "the office to see what he could do to keep from paying the full amount that was billed to him"; that it was fully explained to him

that he could borrow the full loan value of the policies, and by applying the surplus of the loans over his prior indebtedness on his premiums and interest, and by paying $132.48 he could make the twentieth or final payments of the premiums on his policies, pay the interest and thereafter would have to pay only interest on his loans to keep the policies in force. The question of surrendering one policy was also discussed, using the surplus of the surrender value over the loan on it to apply on the other premium and paying the balance and the interest in cash. The assistant cashier of the office in the presence of Mr. Rice made the following notations on both of the policy record cards: "11/13/33. Insured to take full loan and pay shortage of $66.24 by end of grace period if possible. G.T." He also wrote the following notation concerning one policy in the presence of Mr. Rice: "November 13, 1933, Insured will attempt to pay $66.24, full loan, or surrender this case and apply balance to C.S. #4902", which was the number of one policy. Mr. Rice left the office without deciding his course of action, neither made nor offered to make any payment and was not heard from again until contacted by the field agent in December, 1933, after the policies had lapsed.

On the other hand, it is contended by the plaintiff that Mr. Rice went to the branch office of the defendant in Fresno to pay the premiums on his two policies and had money to do so; that the assistant cashier told him he would have to pay the full amount of the premiums and interest to keep his policies in force; that this representation was knowingly and falsely made with intent to deceive Mr. Rice and to secure the lapse of the policies because of the evident poor physical condition of Mr. Rice.

█ The case of plaintiff rests entirely on the theory of estoppel. It is well settled that where an insurance carrier, through its duly authorized representative, by means of false and fraudulent representations made under such circumstances that the insured might, and actually did believe and rely upon them, deceived the insured and thereby caused him to default in the payment of a premium, an estoppel would arise which would prevent the insurance carrier from asserting or enforcing a claim that the policies had lapsed. (For illustrations of similar rules, see, *Willcuts* v. *Northwestern Mut. Life Ins. Co.*, 81 Ind. 300; *Phoenix Mut. Life Ins. Co.* v. *Hinesley*, 75 Ind. 1; *Lincoln Health & Acc. Ins. Co.*

v. *Coslow*, 158 Okl. 169 [12 Pac. (2d) 875]; *Sanders* v. *Independent Nat. Life Ins. Co.*, 16 La. App. 212 [133 So. 451]; *American Nat. Ins. Co.* v. *Allen*, (Tex. Civ. App.) 226 S. W. 823; *Vinginerra* v. *Commercial Cas. Ins. Co.*, 156 N. Y. Supp. 573; *Continental Cas. Co.* v. *Johnson*, 119 Ill. App. 93; *Blackerby* v. *Continental Ins. Co.*, 83 Ky. 574.)

To establish her case and contradict the rather clear evidence offered by defendant to the effect that no false representations were made to Mr. Rice, that he was not deceived nor misled, that he neither paid nor offered to pay his premiums, that he merely left the branch office in a state of mental indecision as to the best course of conduct for him to pursue and ultimately did nothing until after both policies had lapsed, plaintiff must rely entirely upon the testimony of Fred Rosser. There is no other evidence in the record tending to support her case.

Rosser was a most unsatisfactory witness. His testimony is vague, rambling and uncertain. We have studied it carefully and believe the following summary gives every shade to it, or possible inference that may be drawn from it, to support the findings and judgment.

Rosser testified that he called at the branch office of defendant in Fresno, probably in March, 1934. He first interviewed T. A. East, the manager. Mr. East had no personal knowledge of what had transpired when Mr. Rice was in the office on November 13, 1933, but called for the Rice file and permitted Rosser to examine it. Rosser found the notations we have already quoted. As Rosser was evidently seeking information upon which to base a claim on the part of Mrs. Rice for payment under the two insurance policies Mr. East called Glenn Terry, the assistant cashier who had talked with Mr. Rice on November 13, 1933. Rosser detailed his conversation with Terry. It may be summarized as follows: That Rice wanted to pay his premiums but was told that it would take about $400 to keep his policies in full force; that Terry said that the company did not have to make the policy loan of $1720 on each policy and permit Rice to pay about $130 in cash which would have paid the twentieth premiums in full and advance interest on the loans, because the policies provided that they would each have a loan value of $1720 only after the twentieth premiums were paid; that Terry tried to get Mr. Rice to drop one policy and pay the premium and interest on the other; that Mr. Rice "refused

to do that, he said it was not worth the difference''; that Mr. Rice wanted to borrow on the policies to pay the interest; that Mr. Rice "got mad" and went home; that Mr. Rice appeared to be in poor health and did not deserve life insurance; that because of Mr. Rice's apparent poor health Mr. Terry would extend him no courtesies; "that the remark was made that he had the money to pay the interest and the premium on one policy, but he would not do that, he got mad, he would not drop one. He figured if he had to pay that he would lose the insurance, there was not much insurance left and he got mad when he tried to make him do that and he went home. That is the only thing I remember being said about it, that he tried to pay on both policies and then they tried to get him to pay on one, and I remember that it was said that he had the money to do that but he just got mad and would not do it. That is the only way I remember now this offer coming in.''

If the testimony of Rosser indicates that there was anything more to the conversation between Terry and Mr. Rice than a general discussion of ways in which Mr. Rice could pay all or part of his indebtedness and keep all or part of his insurance in force; if it justifies the doubtful conclusion that Mr. Rice actually offered to pay the premiums on his policies without paying the interest and that this offer was refused, then defendant violated plain provisions of its contracts. Each policy contained the plain provision that the insured could pay the premiums when due without paying interest on policy loans; that under such circumstances the insurance would be continued in force until the accrued interest on the loans would equal the surplus of the total loan values over the actual amounts of the loans. In this case, if the twentieth premiums had been paid this surplus would have exceeded $130 on each policy which would have continued the insurance in force by paying the interest on the loans to a date well past the date of the death of Mr. Rice.

As one ground of attack on the sufficiency of the testimony of Rosser, defendant points out that Rosser did not know with whom he talked in the branch office in Fresno; that a waiver of the terms of a policy can only be made or an estoppel created by a duly authorized representative of the company while acting within the scope of his authority. Speaking very generally this is usually true. (*Iverson* v. *Metropolitan Life Ins. Co.*, 151 Cal. 746 [91 Pac. 609, 13

L. R. A. (N. S.) 866]; *MacGruer* v. *Fidelity & Casualty Co.*, 89 Cal. App. 227 [264 Pac. 501].) While Rosser failed to identify East and Terry as the men with whom he talked, this omission in his evidence was supplied by the evidence of East and Terry who each identified himself as engaging in that conversation. The record is barren of any evidence as to the authority possessed by East or Terry other than that supplied by the facts that East was the manager and Terry the assistant cashier in the branch office. However, the question of their authority does not seem to have been raised at the trial. The evidence was admitted without objection as to their authority to bind defendant. The fact of their possessing such authority seems to have been assumed at the trial. That being so, the question should not be seriously considered here for the first time.

Defendant points to the unsatisfactory nature of the testimony of Rosser and invokes the rules that the presumptions of law are always in favor of fair dealing (*Hall* v. *Susskind,* 120 Cal. 559 [53 Pac. 46]), and that a party alleging fraud must prove his allegations by a clear preponderance of the evidence and that the evidence of fraud must be clear, satisfactory and convincing. (*De Jarnett* v. *Cooper,* 59 Cal. 703; *Truett* v. *Onderdonk,* 120 Cal. 581 [53 Pac. 26]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996]; *Wolfe* v. *Severns,* 109 Cal. App. 476 [293 Pac. 156]; *Shaw* v. *Imperial Mutual L. & B. Assn.,* 4 Cal. App. (2d) 534 [41 Pac. (2d) 574]; *Gorman* v. *Steinke,* 7 Cal. App. (2d) 507 [46 Pac. (2d) 293].) Defendant stoutly maintains, and probably rightly so, that Rosser's evidence is neither clear, satisfactory nor convincing.

The four elements necessary to constitute equitable estoppel are thus set forth in *Jones* v. *Coulter,* 75 Cal. App. 540 [243 Pac. 487], an action to quiet title to real property:

"The facts necessary to be shown in order to call into exercise the principles of equitable estoppel are stated by Chief Justice Field in *Biddle Boggs* v. *Merced Min. Co.,* 14 Cal. 279, 367, as follows: ' . . . *first,* that the party making the admission by his declarations or conduct was apprised of the true state of his own title; *second,* that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third,* that the other party was not only destitute of all knowledge of the true state of the title, but of the

means of acquiring such knowledge; and, *fourth,* that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.' " (See, also, *City of Los Angeles* v. *Babcock,* 102 Cal. App. 571 [283 Pac. 314].)

In *Nilson* v. *Sarment,* 153 Cal. 524, at 531 [96 Pac. 315, 126 Am. St. Rep. 91], it is said:

"Apart from other considerations, two essential elements of an estoppel are, 1. That the party asserting it must have been ignorant of the true state of facts and of the means of acquiring knowledge of them, and 2. That he must have relied upon the statement or admission of the party whom he seeks to bind by such statement or admission."

In *Maggini* v. *West Coast Life Ins. Co.,* 136 Cal. App. 472, at page 479 [29 Pac. (2d) 263], it is said:

"The defense of estoppel arises from section 1962, Code of Civil Procedure: 'Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it; . . . ' It is essential that the party pleading an estoppel must be ignorant of the true state of facts and must have been intentionally led to alter his course to his injury by the act of the other. (10 Cal. Jur., p. 626.) Hence there can be no estoppel of one who has no knowledge of the facts as there can be no claim of estoppel by one who knows his representations are false and knows that the other party is ignorant of their falsity."

In the case of *Wilson* v. *Maryland Cas. Co.,* 19 Cal. App. (2d) 463 [65 Pac. (2d) 903], the following rule is announced:

"Where one holds a policy, referring in apt terms to the warranties and representations contained in the application annexed, for a reasonable time, he is conclusively presumed to know the contents of the contract, and the untruthful answers plainly written in the application. He is thereby estopped to assert that he had no knowledge on the subject. (*Modern Woodman* v. *Angle,* 127 Mo. App. 94, 116 [104 S. W. 297, 304].)"

The only grounds of estoppel found by the trial court were, (1) that Mr. Rice actually tendered the premium payments and that the agent of defendant falsely stated to him that a payment of $195.73 on each policy was necessary to

keep it in full force while in fact a payment of $100.80 would have had that effect, or, (2) that a policy loan and a payment of $66.24 on each policy would have continued it in force.

There is no evidence that Mr. Rice actually tendered either premium. That portion of the quoted finding is not supported by any evidence. For the purposes of this opinion we will, however, indulge in the assumption that the evidence would have justified a finding, if one had been made, that actual tender was excused by the statement of Terry to the effect that a payment of $195.73 on each policy was necessary to keep it in force. In considering the effect of this purported tender or excuse of tender by the purported false statement by Terry, we note that it is admitted that Mr. Rice had possession of his insurance policies. These policies contained in clear and unequivocal language the statement that the insured might pay his premiums without paying his interest and thus continue his insurance in force for the periods we have already indicated. Under the rules just announced Mr. Rice must be presumed to have known the contents of his policies, and, therefore, to have known that he had the right to pay his premiums without paying his interest. He could not have been deceived by the statement of Terry that it was necessary for him to pay about $400, the premiums and interest, in order to keep his policies in force. He is presumed to have known that such statement was false. Knowing it was false, he could neither have believed it to be true, relied upon it, nor have been deceived by it.

The second purported ground of estoppel set forth in the finding to the effect that a policy loan and the payment of $66.24 on each policy would have continued it in force and effect is based on that portion of Rosser's evidence wherein he asserted that East and Terry both stated that until the twentieth premium payments had been paid defendant did not have to make a policy loan of $1720 on each policy so that a payment of $66.24 would have continued it in force. This statement was literally true and in accordance with the provisions of the policies to the effect that the loan value of $1720 on each policy would not become available to Mr. Rice until after the twentieth premiums had been paid. This is clearly stated in each policy. As these statements of East and Terry were true, Mr. Rice could not have been misled,

nor could he have been deceived by them. Therefore, they could not have formed the basis of any estoppel.

For these reasons plaintiff has failed to prove that defendant was estopped to assert that the two policies of life insurance had elapsed. As her case rests entirely on the doctrine of estoppel the judgment in her favor cannot be sustained.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1937.