MATSUO YOSHIDA and Chisato
Yoshida, Appellants,

v.

LIBERTY MUTUAL INSURANCE COM-
PANY, a corporation, Appellee.

No. 15121.

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1957.

Arthur N. Greenberg, Los Angeles, Cal., for appellants.

Lyndol L. Young, Los Angeles, Cal., for appellee.

Before POPE, LEMMON and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellants Matsuo and Chisato Yoshida, husband and wife, obtained a judgment against one Sylvester Gonzales in the Superior Court of California, County of Los Angeles, in 1955 for personal injuries sustained in an automobile collision occurring on April 15, 1953. The judgment unsatisfied, appellants instituted this action in the District Court to recover the amount of the award from Gonzales' insurer, Liberty Mutual Insurance Company. The action, tried by the court without a jury, was successfully defended by the Company on the ground that Gonzales owned the vehicle involved in the accident and that his policy coverage did not extend to an automobile owned by him.

On appeal appellants make two general arguments: (1) Gonzales was not the owner of the car within the meaning of the policy provisions; (2) appellee has waived its defenses or is estopped as a matter of law to deny liability under the policy, by reason of its conduct in respect to Gonzales' application for insurance and/or another accident which preceded the one in question.

I. Was Gonzales the Owner of the Car?

The initial point is without merit. The automobile liability insurance policy contained, inter alia, the following exclusionary clause:

"(2) The insurance does not apply: (a) to any automobile owned by the named insured or a member of his household * * *" 1

The word "owned" is not defined in the insurance contract. It is a word obviously susceptible of several possible meanings and shadings. And appellants earnestly contend that this Court should construe it in the manner most likely to impose liability on appellee.

This Court has recognized and adhered to the well-settled rule of construction that where ambiguity or uncertainty exists in an insurance contract, such ambiguity or uncertainty will be resolved adversely to the insurer. Allstate Ins. Co. v. Erickson, 9 Cir., 227 F.2d 755; Kershner v. United States, 9 Cir., 215 F. 2d 737; Continental Casualty Co. v. Phoenix Construction Co., 46 Cal.2d 423, 296 P.2d 801; Arenson v. National Automobile & Casualty Insurance Co., 45 Cal. 2d 81, 286 P.2d 816; Fageol Truck & Coach Co. v. Pacific Indemnity Co., 18 Cal.2d 731, 117 P.2d 661. The rule has particular application where exclusions are involved. Pendell v. Westland Life Insurance Co., 95 Cal.App.2d 766, 214 P. 2d 392. However, the rule is not without limitation. Some actual or apparent ambiguity must be present before the rule comes into play. Carabelli v. Mountain States Life Ins. Co., 8 Cal.App.2d 115, 46 P.2d 1004; Wisconsin Hydro Elec. Co. v. Equitable Fire & M. Ins. Co., 8 Cir., 233 F.2d 313. Where there is no ambiguity, there is nothing to be construed. Home Indemnity Co. of New York v. Standard Acc. Ins. Co., 9 Cir., 167 F.2d 919. And a court cannot and should not do violence

---

1. Appellants disputed the presence of this provision in the contract. The original policy was not introduced in evidence, but appellee did produce what it termed an "exact copy," in which the clause appears. The trial court resolved this conflict in favor of appellee. We cannot disturb its finding on this question.

to the plain terms of a contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract. As stated by the California Supreme Court in Continental Cas. Co. v. Phoenix Construction Co., supra, [46 Cal.2d 423, 296 P.2d 806] "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." Cf. Coit v. Jefferson Standard Life Ins. Co., 28 Cal.2d 1, 168 P.2d 163, 168 A.L.R. 673; Sampson v. Century Indemnity Co., 8 Cal.2d 476, 66 P.2d 434, 109 A.L.R. 1162.

■ Did Gonzales *own* the car in question, a 1937 Chevrolet, at the time of the accident? It appears that he purchased the car under a conditional sale agreement whereby legal title was retained by the vendor until payment of the final installment, which had not been paid when the accident occurred. Whether or not a conditional vendee owns his car must be determined by reference to the law of California, wherein the policy was issued and Gonzales resided. Standard Acc. Ins. Co. of Detroit, Mich. v. Winget, 9 Cir., 197 F.2d 97. The California Vehicle Code supplies a ready answer. Section 66 defines an "owner" as including "the person entitled to the possession of a vehicle as the purchaser under a conditional sale contract." Of course, the statutory definition is not necessarily controlling for the words of a contract are to be taken in their ordinary and popular sense. California Civil Code, § 1644; Massachusetts Mut. Life Ins. Co. v. Pistolesi, 9 Cir., 160 F.2d 668, certiorari denied, 332 U.S. 759, 68 S.Ct. 59, 92 L.Ed. 345. We believe, however, that common understanding of the words "owner" and "own" with respect to automotive vehicles accords with our view. Under law the conditional vendee has the beneficial interest in the automobile, including the right of possession. It is his to drive and use. He lacks only the bare legal title. It seems unlikely, in light of modern purchasing practices, under which a vast majority of automobiles are bought under conditional sale contracts, that the non-owner exception is intended to except only the legal owner. This ordinarily is a bank or a finance company. Such a construction would render the clause a practical nullity. If the clause has any common or popular meaning, it means that a person in Gonzales' position is the owner of the car. Indeed, Gonzales so understood, for in the accident report filed after the first accident he inserted his own name in the blank marked "owner".

Nevertheless, appellants assert that a recent California decision, Oil Base, Inc. v. Transport Indemnity Co., 143 Cal.App. 2d 453, 299 P.2d 952, requires us to construe the word owner to mean either the legal or registered owner. That case dealt with the question of whether a lessee was an owner. The court held that it was not. The decision is not governing authority in the instant matter. Moreover, no contention was made in the trial of that case that the word "owner" had any meaning other than either legal owner or registered owner. There the lower court had nevertheless included as owner one who had the right to possess and use, to the exclusion of others, such as a lessee. The Oil Base case would aid appellants only if we viewed the non-owner clause as exempting the legal owner alone.

■ Appellants urge as one acceptable alternative that owner means registered owner, contending that the Continental Cas. Co. case, supra, requires us to follow the Certificate of Financial Responsibility filed by appellee with the California Department of Motor Vehicles, in interpreting the contract provisions. That certificate indicated insurance coverage for any car "not registered to insured." Assuming arguendo that the teaching of the Continental Cas. Co. case is as appellants contend, they still cannot prevail. Gonzales was the registered owner of the 1937 Chevrolet. Admittedly, the 1953 registration had not yet been

secured at the time of the accident, while the 1952 registration had expired. But in July of 1953 the car was registered for that year. The subsequent registration related back to the beginning of the year. Rainey v. Ross, 106 Cal.App.2d 286, 235 P.2d 45, 50. As stated therein, "the hiatus * * * is more seeming than real." The fact that registration was made in that case within the allowable statutory period whereas in the instant case it was late must be regarded as inconsequential. Otherwise, the insurer would have to pay the penalty for the insured's careless or negligent inaction.

■ Appellants further contend the trial court erroneously found that the effective date of the non-owner endorsement commenced simultaneously with the effective date of the policy. The life of the policy began on May 3, 1952 and ended on May 3, 1953. No date was designated on the endorsement, although space was provided therefor. The policy was correctly read as a whole. The only reasonable inference flowing from such a reading is that the endorsement co-existed with all other provisions. Appellants' contention of a different effective date for the endorsement is untenable.

II. Did Appellee Waive its Defenses under the Contract or is it Estopped to Assert Them?

Gonzales filed his application for insurance under the California Assigned Risk Plan in early April, 1952. The Assigned Risk Plan is designed to provide automobile liability insurance for those persons who are unable to procure insurance through ordinary channels. All automobile liability insurance carriers engaged in business in California are required to participate in the Plan and each carrier is assigned its pro rata share of assigned risks. Cal.Ins.Code, § 11160 et seq. Gonzales' difficulty in procuring regular insurance coverage arose apparently from his poor driving record, which included numerous traffic violations and at least two prior accidents.

■ He made the application at the offices of Biebrach, Bruch, and Moore, Inc., insurance brokers in San Jose, California. This firm represented Gonzales and was not the agent of appellee. Accordingly, any statements that may have been made by employees of the firm cannot effect appellee's substantive legal rights, for they had no authority, actual or apparent, to bind it.

■ The application form was not prepared by the appellee insurance company. When filled in by appellant, it did not expressly state what type of coverage was desired. However, Gonzales did indicate that an "owner and operator" certificate of financial responsibility was required by the Department of Motor Vehicles. The application also stated that Gonzales neither owned nor had registered to him any automobile. Thus Gonzales' status and wishes were contradictory and uncertain. The company issued a non-owner policy. Gonzales is presumed to have known the conditions of his policy. Rice v. California-Western States Life Ins. Co., 21 Cal.App.2d 660, 70 P.2d 516. In the absence of an invalidating cause, where a contract of insurance is delivered to and retained by the insured, he will be bound by the terms thereof.[2] Madsen v. Maryland Casualty Co., 168 Cal. 204, 142 P. 51.

The cases cited by appellants for the proposition that Gonzales' failure to read the policy cannot prejudice him are not in point. In both the Golden Gate Motor Transport Co. v. Great American Indemnity Co., 6 Cal.2d 439, 58 P.2d 374, and Ames v. Employers Casualty Co., 16 Cal. App.2d 255, 60 P.2d 347, cases, the insurer or its authorized agent *represented* that the specific coverage requested would be granted. Here no such clear instruction was given and neither the company nor its authorized agents engaged in any

---

2. Gonzales testified that he could not read. This claim is somewhat dubious, in view of his eleventh grade education. (Tr. 209, 210.) In any event Mrs. Gonzales can read and she apparently handled all the insurance affairs, including the application and the accident reports.

conduct pertaining to the application that would reasonably lead Gonzales to believe that he was insured while operating an automobile owned by him.

Snyder v. Redding Motors, 131 Cal. App.2d 416, 280 P.2d 811, relied upon heavily by appellants, is distinguishable. There the applicant filed his application and paid his premium to the insurance company. The company did not issue the policy or refund the premium. In fact, it did nothing. The court, applying simple contract principles, held that the company's silence, under the circumstances, constituted an implied acceptance of the application. The decision has no bearing on the instant factual situation where the policy is issued, and where the provisions of the issued policy are clear and unambiguous.

We next come to a consideration of the most troublesome question raised by this appeal—the legal effect of the settlement of the prior accident by the insurer. It is advisable to review the facts in order that the import of this collision claim, and the surrounding circumstances may be fully comprehended.

On January 29, 1953, Gonzales was involved in an accident with one Ephraim Lopez in Los Angeles, California. Two days later, Gonzales filed an accident report with the appellee. By return mail, he received a printed form card which reads:

"Dear Policyholder:

Thank you for reporting this accident which is receiving our careful attention. You may be sure that *you will receive full protection according to your policy coverage.*"
(Emphasis added.)

Some additional blank claim forms allegedly accompanied the form card, but they were not introduced in evidence. Gonzales and his wife both testified that they received no other correspondence thereafter from the appellee. Meanwhile, following an exchange of letters between Lopez' insurer and appellee, the claim was paid on April 3, 1953, exactly twelve

days before the accident involving appellants. Mr. James Merritt, Pacific division underwriting manager for appellee, characterized this settlement as the result of a "clerical error." Such an explanation does not eliminate the claimed estoppel.

Appellants vigorously contend that by virtue of appellee's payment of the Lopez claim and its communications to Gonzales, it has waived or is estopped from raising certain defenses. The defenses in question are first, of course, the non-owner clause, itself, and secondly, the 30-day notice provision relating to coverage of any newly-acquired automobile.

As to the latter defense it appears that Gonzales first purchased a 1934 Ford and later traded it in for the 1937 Chevrolet. At no time before the Yoshida accident did he notify the company of either of these purchases.

In conjunction with their argument based on waiver or estoppel, appellants object strenuously to the exclusion of evidence bearing on Gonzales' belief and reliance on coverage subsequent to the Lopez accident. However, appellants are precluded from raising this issue because of their failure to set forth the full substance of the rejected evidence in their appeal brief, as required by Rule 18, subd. 2(d) of this Court, 28 U.S.C.A. It is not for this Court to speculate what the answers would be, or to assume that they would necessarily be favorable to appellants. But aside from the evidentiary rulings there exists the basic question of whether or not the issues of waiver or estoppel were adequately considered by the trial court.

Waiver and estoppel are legal terms which are frequently used interchangeably. Although the legal consequences of each are often the same, the requisite elements are different. Waiver refers to the voluntary or intentional relinquishment of a known right.[3] It emphasizes the mental attitude of the actor. On the other hand, estoppel is any con-

---

3. Connor v. Union Automobile Ins. Co., 122 Cal.App. 105, 9 P.2d 863.

duct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law.[4] It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct. It is in the area of implied waiver that the two doctrines are closely akin.[5]

■ There is authority in California that an insurance company cannot waive or be estopped from denying liability, by reason of subsequent acts or conduct of the insurer, under an automobile liability policy for damages incurred in an accident under conditions specifically excluding the company from liability. Connor v. Union Automobile Ins. Co., 122 Cal. App. 105, 9 P.2d 863. In that case the insurance policy specifically excluded damages occurring while the automobile was used for towing a trailer. The accident happened while the car was towing a trailer. But the insurer's agents mistakenly directed that repairs be made and the company paid $125 for these repairs. The court held that the company had not waived its defense to liability nor was it estopped from raising that defense. That decision appears to still be good law in California, and it would control but for one significant factual difference. There the payment was a pure windfall to the insured; here it also was a windfall, but it was more. Prejudice was possible in the instant case if Gonzales was deluded into believing that the Chevrolet was covered and thus deterred from procuring sufficient coverage.

■ It is clear that appellants cannot prevail on the waiver argument whether or not the Connor case is the law of California. The District Court expressly found that appellee did not intend to waive any of its defenses in settling the Lopez claim. We cannot say that the finding, based on substantial evidence, is clearly erroneous. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A.

Estoppel, however, raises a further problem. The record does not plainly show whether or not the trial court completely understood and treated this issue. The court made a specific conclusion of law (which is really a mixed determination of law and fact) that no estoppel was created by the Lopez settlement. However, during the trial it excluded evidence of Gonzales' belief. Such circumstances might incline us to remand the case for further proceedings on the issue of estoppel, but for the fact that at no time during the course of the trial was either Gonzales or his wife asked the foundation question upon which the matter of belief would be predicated, to wit, did Gonzales know the Lopez claim had been settled. The evidence is all to the contrary. Both Gonzales and his wife testified that they received no other communications from the Liberty Mutual Ins. Co. following receipt of the printed form card. That form card is clearly non-committal. There is nothing therein inconsistent with limited coverage for the card explicitly states that the insured "will receive full protection according to your policy coverage." Furthermore, there is nothing in the accident report that would lead Gonzales to believe that the claim would certainly be settled. He did not profess fault. The report stated that he collided with the rear of Lopez' car when a truck in front of Lopez made a "sudden stop." Gonzales thus seemed to place responsibility for the accident on the lead truck.

■ Appellants contend that appellee was under a duty to inform Gonzales of his limited coverage because of its conduct in regard to the Lopez accident, and that its silence estops it from now raising this defense. It is well-settled, though, that silence creates an estoppel only where it has the effect of misleading. French American Banking Corp. v. Fireman's Fund Ins. Co., D.C., 43 F.Supp. 494. Here Gonzales had the policy with the non-owner endorsement

---

4. See Harlan v. Harlan, 70 Cal.App.2d 657, 161 P.2d 490.

5. Kansas City Life Insurance Co. v. Davis, 9 Cir., 95 F.2d 952.

attached. The only mail he received from the company, the printed card, did not obligate it to pay the Lopez claim. Gonzales had never admitted he was responsible for the accident, nor had he asked the insurance company to pay the loss. It is apparent from the record that Gonzales did not even know that the claim had been paid when it was. How then could he have been misled by the settlement of that claim? The answer is obvious. He could not.

Appellants also question the admission of certain evidence. Suffice to say, we find no reversible error committed in that respect. Accordingly, the decision of the District Court is

Affirmed.