[Civ. No. 6230. First Appellate District, Division One.—February 11, 1928.]

GEORGE S. MacGRUER et al., Respondents, v. FIDELITY & CASUALTY CO. (a Corporation), Appellant.

Chickering & Gregory for Appellant.

Chalmer Munday for Respondents.

PARKER, J., *pro tem.*—The action was brought to recover upon a policy of insurance, and judgment being entered for plaintiffs, the defendant appeals. The case was tried by the court sitting without a jury.

The facts of the case follow, and throughout the recital the parties will be referred to merely as plaintiff and defendant, following the plan adopted by counsel in the briefs.

The plaintiff is a copartnership as alleged, and no question arises concerning this or as to the capacity to sue. Defendant is a New York corporation duly authorized to transact business and transacting business of insurance against loss by burglary and payroll robbery and other

similar causes in the state of California. The business of plaintiff is and was at all of the times embraced within this controversy that of plastering contractor, and the principal place of business of plaintiff was at 266 Tehama Street in the city and county of San Francisco. It may here be added, unnecessarily, perhaps, that in the very nature of such a business, operations or work thereunder were conducted wherever plastering contracts were obtained in the construction of buildings, and in all cases without and away from the premises named. In other words, the business enterprise of plaintiff was not of a character such as contemplated activity in any one particular house or lot. The plaintiff in the course of business employed many men, and had established certain pay days, at which time the wages of the men employed were paid, and the usual place of payment was at the place of employment.

In May of 1922 plaintiff applied to defendant for insurance protecting it against loss of its payroll. The particular hazard against which it desired insurance being that of robbery. The term "payroll" in the usual and ordinary acceptation means a fund or sum of money on hand in cash, to be disbursed in payment of wages at a designated place and time, and ordinarily transported in private custody and in lesser exchange denominations. Upon this application in due time defendant, through its admittedly authorized agents and officers, issued to plaintiff a policy of insurance designated "Payroll Robbery Policy (Standard)."

It will be unnecessary to detail here all of the provisions of the policy. Such features thereof as are pertinent will be developed hereinafter.

The amount of the obligation assumed by the terms of the policy was $3,000. As stated, this policy was executed and delivered as of May, 1922, and by its terms the coverage was to be for a term of one year. At the end of the period thus designated the policy was renewed to cover the intervening period to May, 1924. No question is presented as to payment of premiums, it being admitted that the same were paid and the contract in full force up to May, 1924. The insurance was negotiated through one William A. Newsom, Jr., concerning whom more will appear hereafter. In January,

1923, the plaintiff became engaged upon a contract involving the plaster work on the Biltmore Hotel at Los Angeles, and in the course of this work employed many men. In January, 1923, plaintiff addressed a letter to Scott & Newsom (being the same Newsom referred to before), which letter specifically referred to the subject of "Fidelity and Casualty of N. Y., Payroll Policy." The letter *verbatim* is as follows: "In view of our present payrolls on the Biltmore Hotel, Los Angeles, we desire you to cover us immediately with additional insurance. Our policy now calls for three thousand ($3,000.00) dollars. We wish this extended to eight thousand ($8,000.00) dollars. Inasmuch as our payrolls will perhaps only run this amount for some three or four months, we wish you to inform us if we can raise the coverage for that period of time and then return to the original coverage of $3,000.00 You might inform us of the minimum time we can raise a payroll policy, also if this procedure is permissible. Supply us with the premium rates for the above information, copy of original policy and rider thereto." Receiving no reply to this letter within a reasonable time, plaintiff addressed another letter to Scott and Newsom under date of February 7, 1923, attention of Mr. Newsom, which letter is as follows: "Referring to our letter of the 22nd of January, please give this matter your immediate attention and advise us what you have done in the matter of raising our payroll insurance to $8,000.00. Trusting you will appreciate the importance of protecting us as we have requested." Both of these letters were dated at and mailed from Los Angeles.

Before proceeding further, the various parties acting on behalf of defendant may be here identified. It is admitted by defendant that one Treganowen was office manager and assistant resident manager of the Fidelity and Casualty Company, defendant, and his authority to represent the company defendant is conceded. William Newsom, Jr., was referred to as a special agent of defendant. Under his certificate of authority issued to him by defendant, he was designated as an agent in San Francisco and vicinity to act in all lines and to countersign policies and renewals thereof, and to perform such further acts as are incidental to the prosecution of the company's business and as are

authorized by the written contract by which he was appointed. This certificate of authority was issued out of the main office of defendant, in New York, under the seal of the company and duly executed. The office of Newsom was immediately adjoining the main San Francisco office of the company, there being a door between, and the company paid the rent of Newsom's room.

When Newsom received the letters set forth hereinbefore he personally submitted the same to Treganown and discussed the situation with him many times. Treganowen had issued the policy then in effect. Newsom told Treganowen that he had an inquiry from plaintiff for additional insurance, and that plaintiff was then operating in Los Angeles as well as in San Francisco and Fresno; also explaining to him that it was possible that at some time plaintiff might get a job at some unforeseen place. Newsom suggested and requested that the plaintiff should have coverage for at least four places. Treganowen assured Newsom that he would take care of the matter, and his method of thus handling the situation was to issue a new policy for and in the amount of $5,000, and attach certain riders to the then outstanding policy of $3,000. We have nothing before us indicating the provisions of the second policy for $5,000, and no issue seems to have been raised concerning it. It would no doubt have been helpful to the trial court and to us had this last policy been made a part of the record. However, as liability was admitted and discharged to the extent thereof under the last policy, we may assume that it did specifically cover the Los Angeles job. This brings us back to the original policy here involved.

This policy, as hereinbefore indicated, was in a standard form. By its terms it agreed to indemnify assured against all loss by robbery occurring during the hours beginning at 7 A. M. and ending at 7 P. M. of property intended for the sole use of the payroll of the assured, from a custodian while inside or outside of the premises, engaged in any of the regular duties devolving on the custodian in connection with the payroll of the assured. The term "premises" within the meaning of the policy is limited to the interior of the assured's office, store or factory, occupying the ground floor of 266 Tehama Street, San Francisco. By the terms of the

policy, the payroll is to be taken from bank to location where work is being carried on. Paragraph or clause 9 of the policy provided: "There will not be at any one time more than one custodian having in his care and custody property insured hereunder." On the policy as originally executed and delivered there was an attached rider providing that for a premium of $18.22 the company would continue the policy in force for the period of another year, and then upon payment of $12.15, the policy would be continued for still another year. After the application for increased insurance had been received and considered, the defendant, through its admittedly authorized representative, Treganowen, in addition to issuing the $5,000 policy referred to, made changes in the original $3,000 policy by attaching riders thereto, which will be now discussed.

The first rider provided that for an additional premium of $15.92 (fifty per cent increase) clause 9 of the policy is amended to provide that there may be at one time more than one custodian, namely, four custodians having care and custody of property insured. The next rider provided for different premium rates in the event of renewal. By the terms of this rider the original rates on renewal were doubled.

It may be here repeated that all of these changes and the execution of the new policy were in response to the letters received from plaintiff hereinbefore set forth, and were delivered to Newsom after all of the requirements of plaintiff had been thoroughly discussed.

Upon receipt of the new policy and the changed riders for the first policy, Newsom, under date of February 27, 1923, forwarded to plaintiff at Los Angeles the riders with directions to attach same to the policy, and in the letter of transmittal assured plaintiff that under the rider amending clause 9 as to custodians, the policy then provided for four custodians in four different locations.

This sufficiently sets forth the record. It is conceded, for the purposes of this branch of the case, that if the policy as amended covered the plaintiff's payroll while operating in Los Angeles, defendant is liable. No question arises as to loss or due proof thereof at this time. The contention of appellant is that the policy as changed provided for extra

custodians, but all confined to San Francisco, and by the terms of the policy are tied to the premises in San Francisco, described as 266 Tehama Street.

Appellant argues that if it be conceded that plaintiff asked for and defendant intended to give to him a policy covering the loss here involved, that nevertheless such a policy was not executed, and that if plaintiff has any remedy it is to seek a reformation of the contract and then sue upon the policy as reformed. The argument of appellant continues to the effect that the policy specifically designates the premises at Tehama Street, and by implication confines the liability to business done from those premises. In support of this it urges the facts and circumstances surrounding the execution of the original policy, and the further contention that the company had a right to believe and did believe that its risk would be confined to San Francisco, and with this in view accepted the risk insured against. Many authorities are cited to establish the principle that an insurer is liable only to the extent of his contract, and with these authorities we need have no quarrel. We may concede that the courts have been in general accord on the principle that no new or additional liability shall be placed on an insurer beyond the terms of its written policy. Insurance, as a legitimate branch of modern business life, is essential to economic progress and is encouraged under the law. Notwithstanding this, whether it be a policy of insurance or any other form of contract, the law still retains its one dominant characteristic as a means of promoting justice. Accordingly, the law undertakes two inquiries. First, what was the actual contract, and secondly, what has been the conduct of the parties with reference thereto?

Here the actual contract is in itself vague and ambiguous. The main clause in the contract provides against loss by robbery from a custodian *inside or outside* of the premises, engaged in any of the regular duties in connection with said payroll. Appellant concedes this, but claims that after describing the premises the term "outside" meant immediately outside. That this is a forced construction is apparent from the further provision of the policy that the payroll insured is to be taken from the bank direct to the location where the work is being carried on, with no refer-

ence whatsoever to the premises. ■ The phrase "inside or outside" usually gives the idea of a whole, and without qualification indicates no limitation. In passing it might be observed that if the policy had referred to San Francisco, and had specified the liability as attaching to the payroll "inside or outside" of San Francisco, it could not be seriously contended, in the absence of some qualification, that the liability extended only to places immediately adjoining the city named. When appellant argues that at the time of the execution of the policy the facts and circumstances surrounding were such as to induce the company to believe that the extent of liability incurred was confined to San Francisco, and that if an ambiguity appears it is to be resolved by carrying out the intent of the parties, such an argument but admits the liability here, for the reason that when the policy was altered and re-executed, the facts surrounding demonstrated the intent of all concerned and left no uncertainty therein. The company knew just exactly what plaintiff desired in the way of protection. It knew that he required and requested protection for his Los Angeles payroll to the extent of $8,000. By no stretch of the language of the letter of plaintiff can it be inferred that plaintiff was seeking $5,000 for Los Angeles, and then wanted the privilege of four custodians instead of one for the San Francisco payroll. There are but two conclusions which can be drawn from the fact of change in the original policy. One is that the policy was changed and the premium raised pursuant to a desire and intent to give the insured the additional protection desired, and the other is that the change was made for no reason at all, but just out of a clear sky.

We adopt the first conclusion. There is nothing in the policy itself indicating that its effect was limited to San Francisco; and even in its original form providing for one custodian and not requiring payment from the premises described but specifically waiving that payment be from such place, it might well be construed as covering a Los Angeles payroll.

Appellant urges then that if plaintiff was covered on the Los Angeles payroll, why did he seek the change in the form of contract? Then comes to appellant the unanswer-

able question that if the policy did not cover Los Angeles, what purpose could there have been in the modifications and additions other than to cover the last-named place? The usual form of printed policy contains general clauses, followed by exceptions to be inserted governing each particular case. These exceptions when inserted override general terms inconsistent therewith pursuant to elementary rules of construction.

Without taking up each line of argument advanced by appellant, or pointing out the inconsistencies apparent, we hold that the contract itself with its riders and modifications is sufficient to embrace the plaintiff's claim here. And further still we hold that if there should be the slightest doubt remaining on that score, the defendant should be and is estopped under the admitted facts from urging a defense on that ground (*Reid* v. *Northern Assur. Co.*, 63 Cal. App. 114 [218 Pac. 290]; *Steil* v. *Sun Ins. Co.*, 171 Cal. 795 [155 Pac. 72]). The cases cited, containing the same facts, confirm the settled law of this state that an estoppel arises from acts and conduct of duly authorized representatives of insurance companies, and operates to foreclose defenses upon the policy otherwise permissible.

What has been said disposes of the points urged by appellant regarding alleged errors in the admission of certain correspondence. If the contract was as indicated by an unauthorized communication, no harm could result from the fact that the person expressing such a conclusion had no authority to bind the company. (*Provident G. Mining Co.* v. *Manhattan Co.*, 168 Cal. 304 [142 Pac. 884].)

Finally appellant contends that should it be determined that the policy in question covered loss by robbery of the payroll in Los Angeles, still no liability accrued under the policy for the simple reason that the loss claimed did not result in robbery.

This brings us to an examination of the facts surrounding the loss, it being conceded that there was a loss, and due proof thereof made sufficient to warrant recovery in case of robbery.

The facts are these. Simpson, one of the plaintiffs, testifies: "On February 5, 1924, about 3 P. M., I took a payroll from Bank of Italy in Los Angeles to Biltmore Theater,

the points mentioned being but a few blocks apart. The payroll contained some $7,951 lawful money of the United States, and was to be used exclusively in paying the wages then due to employees of the assured. I took the money to the job and turned it over to the foreman to pay off. During the conversation with the foreman, I handed him the money, and both of us were standing close together, and as I handed him the money there was a hand that came between us and took the money, and a voice said, 'I'll take this.' It was the hand and voice of a stranger, and as the hand grabbed the money the stranger started to go. At first I did not realize what happened, but before the stranger had gone twenty feet I knew it was something wrong and ran after the fellow. The fellow pulled a gun and fired two shots. Between dodging around I managed to gain on the holdup man and as I would get closer he would shoot. Finally, after advancing and backing, and after many shots had been fired, I got up face to face with him, and he put the gun right in my face, and as I jumped to one side he fired again, and I stopped and the hold-up man escaped. His method of escape was to jump in a standing automobile, and under threat of the gun he compelled the driver to proceed. I never got the money back, and the exact amount I lost was $7,949.15.''

Appellant contends that these facts do not show the commission of any robbery. It concedes the taking to be felonious, but characterizes it as larceny or any other form of theft exclusive of robbery, and particularly is it urged that the acts detailed do not constitute robbery as the term is defined in the policy itself.

The policy limits the liability to a felonious and forcible taking (a) by violence inflicted upon the person in the actual care and custody of the property at the time; (b) by putting such person in fear of violence; (c) by an overt felonious act committed in the presence of such person or persons and of which they were actually cognizant at the time.

The felonious taking thus described conforms to the definition of robbery as found in the Penal Code of this state, section 211. All parties here concede that if the offense

committed in the taking of the payroll was larceny, or any offense other than robbery, plaintiff cannot recover.

We hold that the taking was of a character sufficient to bring it within the terms of the policy and fasten liability on defendant. The entire transaction from the appearance of the hand to the last shot immediately preceding the escape constituted but one connected occurrence. And surely in that transaction we find unmistakably a characteristic of robbery, namely, putting a person in fear of violence.

There is a sharp conflict of authority on the question. Many courts hold that the actual taking must be accomplished by means of force or fear; that the physical act resulting in a change of possession must be so accomplished. A digest of all of the authorities would serve no useful purpose. As is not unusual, no case can be found exactly corresponding in facts. All of the authorities, however, agree that a taking without means of force or fear is not robbery. And likewise all agree that the felonious taking by means of force or fear constitutes the crime of robbery. The point then arises as to just what constitutes a taking. If the felonious taking is completed without force or fear, then subsequent force or fear employed in resisting recovery has been held by some of the authorities to be so far separated from the taking as to change the character of the offense. No more fertile field for argument can be found than on this very topic. In our opinion, with the facts of the instant case as stated, to hold that the taking here in question was without the use of force or fear, and therefore not a robbery, would be to hold against both the letter and the spirit of the law. The law grades offenses proportionate to the wrong done and the injury resulting or likely to result to the body politic. The classification is not an arbitrary one, but is founded upon centuries of human experience. Throughout the law deprecates violence, and through no niceties of construction should it be favored. As before stated, there are many of the older authorities that adopt a forced reasoning in attempting to segregate and individualize each step in the commission of an offense. But we feel that under present conditions this overnicety should be abandoned. In the case at bar the predominant elements in the taking were force and fear. The thief was

armed at all times, and the actual physical act of gaining possession was obviously with the intent to assert and enforce that possession even at the expense of human life. The loss of the payroll was not in any sense due to the mere gaining possession, but was the result of the violence used and fear engendered thereby. Without pursuing the subject further, we hold that the facts showed a robbery within the meaning of the policy.

Incidentally, it might be added that the defendant company recognized this in paying the claim under the second policy of $5,000 and did not dispute that a robbery had occurred. This of course means nothing as a legal proposition. It does show, however, that a mere recital of the facts is quite convincing. Moreover, clause (c) of the policy fastens liability of the defendant for loss resulting from felonious and forcible taking "by an overt felonious act committed in the presence of the custodian and of which he was actually cognizant at the time."

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 9, 1928.