[Crim. No. 3086.    Third Dist.    Oct. 11, 1960.]

THE PEOPLE, Respondent, v. ROY DELANEY, Appellant.

Carolyn Kemmler, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Edsel Haws, Deputy Attorneys General, for Respondent.

WARNE, J. pro tem.*—A jury found the appellant guilty of first degree murder of Henry Nakatomi and fixed the penalty at life imprisonment. Judgment was entered that appellant be confined in the state prison for the remainder of his natural life. Appellant, having admitted four prior felony convictions, was adjudged a habitual criminal. He has appealed from the judgment and from the order denying the motion for a new trial.

Appellant and one Pete Jones entered Henry's Market, located at 1215 Third Street in Sacramento, at approximately 5 p.m. on July 21, 1959. At the time appellant entered, Henry Nakatomi, the owner of the store, was working at the meat counter and his niece, Dale Hirose, was waiting on customers near the cash register. Lynn Nakatomi, the daughter of Mr. Nakatomi, was in the restroom and Mrs. Nakatomi was in the upstairs portion of the building. Jones engaged Dale in a conversation and while so engaged she observed appellant move to the vicinity of the cigarette rack. While Dale was thus engaged in conversation with Jones, Mr. Nakatomi moved to the front of the store and shouted to appellant, ''I

---

*Assigned by Chairman of Judicial Council.

saw you take that money. Now put it back." Appellant attempted to leave the store and Mr. Nakatomi scuffled with him in order to prevent his departure. At this point Mr. Nakatomi requested Dale to call the police and she relayed the message to Mrs. Nakatomi. Upon Dale's returning to the scene of the encounter, Mr. Nakatomi asked her to bring him a knife. She obtained a butcher knife from the meat counter and gave it to him. Appellant by this time was sitting on some sacks and Mr. Nakatomi told him to remain there until the police arrived. Appellant kept getting up and Mr. Nakatomi would push him down again. Upon receiving the knife, Mr. Nakatomi stated to appellant, "Now I have got a knife and I can cut you now, too." A few minutes later, Dale noticed blood on appellant's shirt and some blood on Mr. Nakatomi's hand. Mr. Nakatomi then stated to appellant, "You can't do this to me. This is my store." Appellant replied, "Well, you have got your money back. Now let me go. You have got some of mine too." Then at Mr. Nakatomi's request his daughter, Lynn, obtained a shotgun and shells for him. At this point appellant commenced to make his way down the aisle towards the front door. At the same time he was telling Mr. Nakatomi to let him go. Mr. Nakatomi also moved down the aisle to the front door, holding the shotgun by the barrel with the breech open and the stock over his shoulder. He struck appellant on the shoulder with the stock of the gun. Appellant then attempted to open the door. Mr. Nakatomi said, "I will use this gun if you don't stay in here." A scuffle ensued and one shot from the gun was discharged into the floor. Appellant managed to get halfway out of the door. Mr. Nakatomi dropped the gun and pulled appellant back into the building. The door was closed by the girls. The two men then started to struggle for the gun. During the struggle the barrel was pointed towards Mr. Nakatomi's chest and he was attempting to push it away. Appellant was pulling the gun, trying to obtain possession of it. At this point the second shot was discharged into Mr. Nakatomi's chest. He died instantly. Appellant fled and was apprehended in the hotel where he resided at approximately 5:20 p.m. He had blood on his chest and a T-shirt which was found in his room was covered with blood.

In a statement, made while being questioned by a member of the district attorney's staff, which was taken down by a court reporter and later transcribed, appellant voluntarily

said that he and Jones decided to enter the store for the purpose of taking money out of the till.

Appellant, testifying in his own behalf, admitted he entered Henry's Market on the day of Mr. Nakatomi's death, but he denied he had formed an intent to obtain money from the cash register; in effect he denied planning the burglary with Jones. He testified that he entered the store to purchase fruit, and following the purchase Mr. Nakatomi accused him of stealing money from the cash register.

Appellant makes the following contentions: (1) Appellant's crime, if any, could not be murder as a matter of law, for the element of malice aforethought, either express or implied, was not present; (2) the alleged felony was not the proximate cause of Mr. Nakatomi's death; (3) Mr. Nakatomi's death did not occur in the perpetration of a felony since the alleged burglary was not completed, but abandoned; (4) appellant cannot be guilty of murder because there is no substantial evidence to show he fired the fatal shot. We find no merit in any of these contentions.

Appellant by his own admission stated that he and his accomplice, Jones, entered the store for the purpose of taking money out of the till. Thus the murder was committed in the perpetration of burglary. (Pen. Code, § 459.) The evidence shows that the homicide and burglary were part of one continuous transaction. The direct and immediate cause resulted from appellant's endeavor to escape from the scene of the burglary. Murder committed in perpetration of burglary is murder in the first degree. (*People* v. *Chavez,* 37 Cal. 2d 656, 670 [234 P.2d 632] ; *People* v. *Mason,* 54 Cal.2d 164 [4 Cal.Rptr. 841, 351 P.2d 1025].) Appellant argues that the element of malice aforethought was not present. In this kind of murder the law has said to the malefactor, as stated in *People* v. *Milton,* 145 Cal. 169, 171-172 [78 P. 549] :

". . . If in your perpetration of or attempt to perpetrate arson, rape, robbery, burglary, or mayhem you shall take the life of a fellow-being, intentionally or unintentionally, your crime is murder of the first degree. The killing may be willful, deliberate, and premeditated, or it may be absolutely accidental. In either case, you are equally guilty. The elements of willfulness, deliberation, and premeditation are not indispensable to your crime. The murder, under section 187 of the Penal Code, is established, in that the killing is unlawful, it having been perpetrated in the performance or attempt to perform one of these felonies, and the malice of the aban-

doned and malignant heart is shown from the very nature of the crime you are attempting to commit.'' (See also *People* v. *Morlock,* 46 Cal.2d 141, 146 [292 P.2d 897]; *People* v. *Cheary,* 48 Cal.2d 301 [309 P.2d 431]; *People* v. *Coefield,* 37 Cal.2d 865 [236 P.2d 570].)

Even if we assume that the evidence only establishes that the shotgun was discharged by a jar occasioned by the struggle for it, appellant's guilt of first degree murder would still be established. Under the Coefield case, *supra,* such evidence shows that the killing was committed in connection with conduct intended to aid appellant's escape and as a part of one continuous transaction and was murder in the first degree.

Appellant argues that there is not sufficient causal connection between the commission of the burglary and the homicide, stating that the proximate cause of the homicide was created by the victim bringing a butcher knife and a shotgun onto the scene. A similar argument is made that the homicide was not committed in the perpetration of burglary because the burglary was not only completed, but abandoned, at the time of the killing.

In *People* v. *Chavez, supra,* the trial court refused to give the following instruction:

''In order to find the defendant guilty of murder in the first degree on the ground that the defendant killed the deceased in the perpetration of burglary, you must find that the defendant entered the building with the intent to commit a felony, and that in the prosecution of that purpose, and in pursuance thereof, the defendant killed the deceased; the killing must have been a part of the felony in an actual and material sense, and have resulted as a natural and probable consequence thereof.''

In holding that the refusal to give the instruction was proper, the court stated at pages 669-670:

''In his argument, Chavez erroneously assumes that to bring a homicide within the terms of section 189 of the Penal Code, the killing must have occurred 'while committing,' 'while engaged in,' or 'in pursuance' of the named felonies, and that the killing must have been 'a part of' the felony or attempted felony 'in an actual and material sense, and have resulted as a natural and probable consequence thereof.' The law of this state has never required proof of a strict causal relationship between the felony and the homicide. The statute was adopted for the protection of the community and

its residents, not for the benefit of the lawbreaker, and this court has viewed it as obviating the necessity for, rather than requiring, any technical inquiry concerning whether there has been a completion, abandonment, or desistence of the felony before the homicide was completed.

"In *People* v. *Boss,* 210 Cal. 245, 252, 253 [290 P. 881], this court said that the felony murder rule '. . . was adopted to make punishment of this class of crime more certain. It was not intended to relieve the wrongdoer from any probable consequences of his act by placing a limitation upon the *res gestae* which is unreasonable or unnatural.' ▮▮▮ The homicide is committed in the perpetration of the felony if the killing and felony are parts of one continuous transaction. (*People* v. *Miller,* 121 Cal. 343 [53 P. 816].) Likewise, the homicide was said to be murder in the first degree when it occurred during a 'continuous integrated attempt to successfully escape after the perpetration of the robberies.' (*People* v. *Rye,* 33 Cal.2d 688, 693 [203 P.2d 748].) In that case the robberies took place a considerable time before the fatal beating was administered for the purpose of preventing discovery of the previously committed felony.

"There being no requirement that the homicide occur 'while committing' or 'while engaged in' the felony, or that the killing be 'a part of' the felony, other than that the two acts be parts of one continuous transaction, the trial court did not err in refusing the requested instructions."

Further, in *People* v. *Mason, supra,* it was contended that the trial court erred in instructing the jury with respect to murder committed in the perpetration of burglary on the ground that the burglary, if any, was completed when defendant entered the house, and that therefore the killing about 20 hours later was not committed in the perpetration of burglary. In rejecting this contention, the court stated at page 169:

"Although the killing in the present case occurred about 20 hours after defendant entered the house, if the jury found that defendant committed burglary by entering the house with the intent to commit a felonious assault, the homicide and the burglary were parts of one continuous transaction. (See *People* v. *Witt,* 170 Cal. 104, 106 [148 P. 928]; *People* v. *Kelso,* 25 Cal.2d 848, 851 [155 P.2d 819]; *People* v. *Morlock,* 46 Cal.2d 141, 146-147 [292 P.2d 897]; *People* v. *Cheary,* 48 Cal.2d 301, 310, 318 [309 P.2d 431]; *People* v. *Jones,* 52 Cal.2d 636, 651 [343 P.2d 577].) Accordingly, the trial

court did not err in instructing the jury that murder committed in the perpetration of burglary is murder of the first degree.''

The evidence is sufficient to support the verdict.

The judgment and the order denying the motion for a new trial are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 4, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 7, 1960.