[Crim. No. 7945. Second Dist., Div. Two. Mar. 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES EDWARD YOUNG, Defendant and Appellant.

David Daar, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Stanley X. Cook, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant Young appeals from a judgment convicting him of voluntary manslaughter of one Clifton Lee Harris. His counsel raises the single contention that "the trial judge refused to instruct upon the theory of justifiable homicide on attempting to prevent commission of a felony," and thereby erred prejudicially.

The court gave certain instructions upon justifiable homicide (which were in fact explanatory of the doctrine of self-defense), pertinent portions of which are set forth in the footnote.[1] Appellant's rejected requests were based upon

---

[1] "CALJIC 321-B. Justifiable Homicide. Lawful Defense of Person.

"Homicide is justified and not unlawful when committed by any person in the lawful defense of such person, ~~or of a wife or husband, parent, child, master, mistress or servant of such person~~ when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed.

"A bare fear of the commission of any of the offenses mentioned in this instruction, to prevent which homicide may be lawfully committed, is not sufficient to justify it. The circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone."

"CALJIC 322. Justifiable Homicide in Self-Defense. Guiding Principle.

"A homicide is justifiable and not punishable when committed by a person in the lawful defense of himself, when he has reasonable ground to apprehend that he is in danger or death or great bodily injury and that there is imminent danger of such a design being accomplished. The acts which a person may do in self-defense and justify under a plea of self-defense depend upon the conduct of those involved in the encounter

**644**

subdivisions 1 and 2 of Penal Code, section 197: "Homicide is also justifiable when committed by any person in either of the following cases: 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein. . . ." Those requests are copied in footnote 2.[2]

Counsel's argument in this court is that appellant, in a running fight which ended in Harris' death, was engaged in resisting an attempt to commit a felony, namely, robbery; that the court refused to submit this theory to the jury and thus deprived him of a fair trial. The prosecution's evidence would square with this theory up to a certain point where it indicates that defendant resorted to excessive violence and stabbed his opponent to death while he was lying helpless in the gutter. Defendant's own theory, his testimony, was that he continuously fought Harris to prevent his taking defendant's money from him and to compel return of it after he had snatched it from appellant's hand; also that no excessive force had been used and decedent threw and impaled himself upon appellant's knife, thus inflicting the fatal wound.

In examining the question of error in refusing to

---

and the circumstances attending it. No fixed rule is applicable to every case, but certain general principles are established as guides for the jury's determination. . . ."

[2]"CALJIC 321-A. Justifiable Homicide in Defense of Person, Habitation or Property.

"Homicide is justifiable and not unlawful when committed by any person in defense of habitation, property or person against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultous manner to enter the habitation of another for the purpose of offering violence to any person therein.

"A bare fear of the commission of any of the offenses mentioned in this instruction, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party must have acted under the influence of such fears alone."

"CALJIC 321. Justifiable Homicide Resisting Attempt to Commit Felony.

"Homicide is justifiable and not unlawful when committed by any person when resisting any attempt to murder any person, or to commit a felony, or to do some great bodly injury upon any person."

instruct upon defendant's theory the reviewing court must assume that the jury might have believed appellant's story and found according to his theory had appropriate instruction thereon been given. *Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 643 [226 P.2d 897] : "[Respondents] rely on the rule that a judgment will not be reversed on appeal if there is substantial evidence to support the verdict on any theory on which it might have been reached. . . . It is not applicable, however, to a case such as this, in which the jury has been precluded by erroneous instructions from considering a valid theory upon which a result different from that actually reached might have been supported. The error in such a case is not cancelled by the fact that the jury might have found for the prevailing party on some other ground. ' "It is true that in determining whether a verdict is supported by the evidence, we must assume that the jury accepted the view most favorable to the respondent. However, in determining whether or not the instructions given are correct, we must assume that the jury might have believed the evidence upon which the [cause of action or defense of] the losing party was predicated, and that if the correct instruction had been given upon that subject the jury might have rendered a verdict in favor of the losing party." ' [Citations.] Where, as here, the error consisted in instructing the jury as a matter of law on a question that is one of fact on conflicting evidence, and a determination favorable to the losing party might have been made if the error had not been committed, that error is prejudicial. [Citations.]" To the same effect see *Chalmers* v. *Ebbert,* 128 Cal.App.2d 374, 378 [275 P.2d 629] ; *Phillips* v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].

Moreover, the trial judge cannot reject defendant's theory because he finds the supporting proof to be not credible. If there is any supporting evidence of substantiality the trial judge must accept it for purpose of instructing the jury. *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281] : "It has been held that a defendant is entitled to instructions on his theory of the case as disclosed by the evidence, no matter how weak. As so ably stated in *People* v. *Burns,* 88 Cal.App. 2d 867, 871 [200 P.2d 134], with ample citation of authority: 'It is *elementary* that the court should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatever.* [Citations.] *The fact that the evidence may not be of a character to inspire belief*

*does not authorize the refusal of an instruction based thereon.* [Citations.] *That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.* [Citations.]'' (Italics ours.) This language was repeated in *People* v. *Miller,* 57 Cal.2d 821 829 [22 Cal.Rptr. 465, 372 P.2d 297]. To the same effect, see *People* v. *Carnine,* 41 Cal.2d 384, 389-390 [260 P.2d 16]; *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785]; *Bonebrake* v. *McCormick,* 35 Cal.2d 16, 19 [215 P.2d 728]; *Selinsky* v. *Olsen,* 38 Cal.2d 102, 103 [237 P.2d 645].

 Thirdly, the trial judge is bound to keep in mind the fact that a justifiable homicide connotes only the use of force which is necessary, or which reasonably appears to be necessary, to resist the other party's misconduct; that use of excessive force destroys the justification, but the question of whether there was such an excess is ordinarily one of fact for the jury to determine. (See *People* v. *Hubbard,* 64 Cal.App. 27, 35-36 [220 P. 315]; Fricke on California Criminal Law (7th ed.) pp. 170-171; 26 Am.Jur. § 102, p. 227; § 123, p. 239; 40 C.J.S. § 98, p. 959; § 101, p. 961; § 110, p. 977.)

Appellant's contention is that he was engaged in preventing Harris from committing a robbery—the taking from defendant's person and withholding money belonging to him, doing so by the exercise of force and fear. Upon the facts entering into this question counsel are not at variance. Both sides accept as true the following facts, most of which are found only in defendant's testimony. Harris was a quarrelsome trouble maker, known generally to be such, and known to defendant to have that reputation. In the night of January 15, 1961, at about 3:30 to 4 a.m., the two men, Harris and Young, arrived at the Hilltop Cafe on South Broadway in Los Angeles. They sat side by side at the counter, Young ordered coffee and Harris asked him to buy some for him; this Young did. When it was served he found he did not have enough silver to pay for it and went into his pocket and brought out all the money he had; it amounted to $95, he having been paid that day. He took a ten dollar bill in his right hand and at that moment Harris without warning snatched the rest of the money from appellant's left hand. He told Harris to give it back ''don't play. I have to have my money.'' Harris said he would not do so and pulled out his pocket knife which had a blade from 1⅞ to 3 inches long, which

was open. He said, "if you attempt to take this money back, I'll cut your throat and your head will roll on the floor," or something like that. Young had no knife and testified that he was in fear for his life and he looked for something with which to protect himself. Harris said, "if you attempt to take this money back, I'll cut your throat and your head will roll on the floor." Defendant asked for his money again. "In fact I pleaded with him," but Harris said he was not going to give it to defendant and did not care how much he pleaded. The cook, hearing the noise, arrived and told them to "take it outside." Defendant told him, "this man has my money. He took it from me just now," and asked the cook to call the police. Harris was slowly walking toward the door and defendant attempted to hold him. Looking for some protection he picked up a butter knife, discarded it as worthless, saw a sandwich knife on the bread board behind the counter, leaned over the counter and picked it up. It was about 16 to 18 inches in length. Thereupon each of the two men adopted the strategy of holding the arm of the other in which he had the knife. In this posture they worked their way outside the front door where the controversy was resumed. Though this is not the end of the story, it affords bases for testing appellant's claim that he was engaged (initially at least) in preventing Harris from robbing him, i.e., preventing the commission of a felony.

Though there are a few cases in this jurisdiction which hold that a robbery is complete after a slight asportation of the loot even though it is not removed from the presence of the victim (*People* v. *Clark*, 70 Cal.App.2d 132, 133 [160 P.2d 553]; *People* v. *Beal*, 3 Cal.App.2d 251 [39 P.2d 504]; *People* v. *James*, 20 Cal.App.2d 88, 90 [66 P.2d 461]; *People* v. *Wellman*, 141 Cal.App.2d 101, 104 [296 P.2d 82]), and they are doubtless correct upon their own facts, the general rule is well established that the attempted escape of the robber with or without the loot is an integral part of a robbery and falls in the category of res gestae. *People* v. *Boss*, 210 Cal. 245, 250 [290 P. 881], expounds the rule as follows: "It is a sound principle of law which inheres in common reason that where two or more persons engage in a conspiracy to commit robbery and an officer or citizen is murdered while in immediate pursuit of one of their number who is fleeing from the scene of the crime with the fruits thereof in his possession, or in the possession of a co-conspirator, the crime is not complete in the purview of the law, inasmuch as said conspirators have

not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape. Robbery, unlike burglary, is not confined to a fixed *locus,* but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime." *People* v. *Kendrick,* 56 Cal.2d 71, 90 [14 Cal.Rptr. 13, 363 P.2d 13], also applies the res gestae concept. *People* v. *Rye,* 33 Cal.2d 688, 693 [203 P.2d 748], *People* v. *Chavez,* 37 Cal.2d 656, 669-670 [234 P.2d 632], *People* v. *Delaney,* 185 Cal.App.2d 261, 264-265 [8 Cal.Rptr. 170], announce and apply the test of whether escape or avoidance of discovery constitutes a part of "one continuous integrated attempt to successfully escape." In *People* v. *Phillips,* 201 Cal.App.2d 383, 384-385 [19 Cal.Rptr. 839], *People* v. *Perhab,* 92 Cal. App.2d 430, 432-433, 436, 438 [206 P.2d 1133], *MacGruer* v. *Fidelity & Casualty Co.,* 89 Cal.App. 227, 237-238 [264 P. 501], a robbery conviction was affirmed although the sole force and fear employed by the robber was used in an effort to escape; it was held that that was an integral part of the robbery and enough to make the penal statute applicable.

█ In this case defendant's money was snatched from his hand so quickly that no particular force was required and no fear engendered upon the instant, but mere demand for return of the money brought forth the opened knife and the threat to cut defendant's head off and he was in fear for his life; "I was always afraid of him." In these circumstances the California cases make it plain that the victim has a right to use reasonable force to recover his money and, if actually or apparently reasonably necessary, to kill the robber in so doing. But when the point of reasonable force is passed, justification ceases (authorities, *supra*).

The "snatching" cases are not opposed to this view.

Exemplified by *People* v. *Church,* 116 Cal. 300 [48 P. 125], *Routt* v. *State,* 61 Ark. 594 [34 S.W. 262], *Lear* v. *State,* 39 Ariz. 313 [6 P.2d 426], and *McClendon* v. *State* (Okla. Crim.) 319 P.2d 333, they differentiate between mere larceny and forceful taking which constitutes robbery. The *Church* case, *supra,* says: ''Conceding defendant took Smith's watch and chain, or either the watch or chain, still, under the evidence we have set out, it is a close question whether such taking constituted robbery or grand larceny. That question was dependent upon the absence or presence of the use of force in the taking; and the use or nonuse of force by defendant was a question of fact essential for the jury to determine in fixing the crime of which the defendant should be convicted. Grabbing or snatching property from the hand has often been held to be grand larceny, and not robbery. (See *Routt* v. *State,* 61 Ark. 594 [34 S.W. 262], and cases there cited.)'' (P. 302.) But the rule is otherwise where the snatching immediately results in force and fear exercised to prevent recapture by the owner. 46 Am.Jur., § 21, p. 149: ''The authorities are agreed that a sudden taking or snatching may be accompanied by sufficient force to constitute robbery. Thus, if a struggle immediately ensues to keep possession of the property and the thief overcomes the resistance, or the article snatched is so attached to the owner's person as to afford resistance or injure the possessor in the taking, the violence is sufficient to constitute the act a robbery.'' See also, 77 C.J.S., § 17, p. 460; *People* v. *Jefferson,* 31 Cal.App.2d 562, 567 [88 P.2d 238].

Upon the foregoing evidence defendant (if believed by the jury) had established the basis for a justifiable homicide provided he did not indulge in more force than necessary to recapture his money.

From this point the testimony diverges widely. The prosecution witnesses say, in substance, that the fight was resumed immediately outside the cafe, with defendant slashing almost continuously at Harris; that the latter backed away around the corner and out of sight; that the two men came into view again and started across the street in a diagonal direction from the cafe; that Harris, who was bleeding freely and leaving a trail of blood from cuts already received, one of them across his face, was running with defendant behind or alongside of him slashing at him with the long knife; that Harris fell at the curb and while he was lying in the gutter defendant stood over him and plunged the knife into his chest with a

650

blow that went through three ribs, the rib cage and out the back, the blow that caused death. Defendant's version, on the other hand, was that he and Harris were holding each other during most of the fight; that Harris fell only to his knee when he reached the curb across the street; that he rose and threw himself upon the knife and thus inflicted the mortal wound upon himself. Defendant was unable to give a reasonable account of the other eight wounds that the coroner's autopsy surgeon found upon the body, one of which went entirely through the flesh of the arm.

It is difficult to envisage the jury finding that defendant did not use excessive and savage force to do away with Harris, but the factual conflict over who inflicted the fatal wound and how it was done necessitates a holding that the question of excessive force was one of fact for the jury, and failure to submit it (upon the judge's own motion, if necessary), when coupled with the refusal of requested instructions upon justifiable homicide, resulted in a miscarriage of justice, a denial of an essentially fair trial.

In the circumstances the judgment must be and it hereby is reversed.

Fox, P. J., and Herndon, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 22, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.