[Crim. No. 16110. Second Dist., Div. One. Aug. 8, 1969]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP
ANTHONY GARCIA, Defendant and Appellant.

Ralph Bencangey, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of assault with a deadly weapon (§ 245, Pen. Code); he appeals from the judgment.

Unable to sleep, Joe Godiness frequently walks at night; around 3 a.m. on July 7, 1968, he was walking in front of his residence when he saw defendant walk across the street; defendant appeared to have been drinking but "was not falling all over himself" and was able to think rationally; he conversed with defendant and scolded him because someone had told him defendant had "dirtied" his car; defendant denied he had done so and challenged him to a fight but Godiness refused and defendant departed. About half an hour later, while Godiness was still walking in front of his house, defendant approached him carrying a bow and arrow; defendant "was pointing it [arrow] at [him]." Because half an hour earlier defendant wanted to fight him and he saw defendant approach with a bow and the arrow pointed at him, Godiness hit and kicked him in an effort to disarm him at which time defendant shot Godiness in the right arm; with the arrow stuck "clean through" his arm, Godiness picked up a wooden bed slat about 3 feet long and disarmed defendant taking his bow and a second arrow which he was afraid defendant might also use on him. During the time Godiness tried to disarm defendant, defendant remained on his feet and at no time fell to the ground. Godiness went into his house, broke the arrow and pulled it out of his shoulder.

Around 5:20 a.m. Officers Beno and Sullenger, driving on 8th Street, saw defendant walk quickly and erratically carrying a garden hoe in the direction of Godiness' residence; he appeared to have been drinking and his right pants leg was torn at the knee; while interviewing defendant Godiness' son came up and the four of them went to his residence where they found Godiness with a severe wound going from the front through to the other side of his body in the area of the right arm and shoulder; Godiness gave the officers a bow and two arrows, one broken with wet blood stains on it; defendant was then arrested and after being advised of his constitu-

tional rights told the officers he was carrying the hoe because he "was going back with the hoe to take care of Mr. Godiness." He did not tell the officers he had been attacked first by two men with boards.

Defendant testified he was on his way home from seeing a girl when he saw Godiness and said hello, but Godiness pushed him away, then accused him of doing something to his car; when he denied this, Godiness became angry; after Godiness calmed down he left saying he would be back; he was not angry but intended to return to try to sell Godiness a bow and arrows; when he returned with the bow and arrows he was attacked with boards by Godiness and another man whom he could not identify; they knocked him down on the ground and he could not get up but when he was trying to get back on his feet he jabbed Godiness with a forward thrust of the arrow; at the time he was detained by the officers he was returning to Godiness' residence with the hoe because he was then very angry.

■ Appellant's claim that the evidence is insufficient to conclude "beyond a reasonable doubt" that when he returned with the bow and arrow an assault with a deadly weapon was committed, is predicated on the theory that the bow and arrow did not constitute a deadly weapon likely to produce death or great bodily injury because the arrow was not "in firing position" or pointed at Godiness, and there can be no assault with a deadly weapon unless the assailant has the present ability to carry it out. He argues that he did not approach Godiness with the bow readied for firing—an arched or "loaded" bow—or in a threatening manner, Godiness was the actual aggressor and in self-defense he thrust the arrow by hand into Godiness' shoulder. This argument is one which should be made to the trier of fact and not to an appellate court. Appellant in effect requests us to reweigh and reinterpret the evidence in a manner consistent with his innocence, but such a determination is the function of the trier of fact; at this stage the test is not whether the evidence may be reconciled with innocence but whether there is substantial evidence in the record on appeal to warrant the inference of guilt drawn by the trier below. (*People* v. *Teale,* 70 Cal.2d 497, 505 [75 Cal.Rptr. 172, 450 P.2d 564]; *People* v. *Bradford,* 70 Cal.2d 333, 341 [74 Cal.Rptr. 726, 450 P.2d 46]; *People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266]; *People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal. Rptr. 30, 401 P.2d 382].)

■ " 'It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' (*People* v. *Robillard* (1960) 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; accord, *People* v. *Love* (1960) 53 Cal.2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 884-886 [256 P.2d 911]; *People* v. *Newland* (1940) 15 Cal.2d 678, 680-683 [104 P.2d 778].) " (*People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].) ■ Viewing the evidence in a light most favorable to the respondent (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), we find ample evidence to support each element of the offense charged.

■ The bow and arrow held in a firing position with the arrow pointed at the victim in such a way as it could be fired in an instant constituted a deadly weapon; it is similar to a revolver with the cartridge in it ready to fire which has been held to be a deadly weapon. (*People* v. *Sandoval,* 222 Cal. App.2d 348, 351 [35 Cal.Rptr. 227]; *People* v. *Roshid,* 191 Cal.App.2d 692, 694 [12 Cal.Rptr. 794].) The manner in which defendant held for use the bow and arrow is sufficient to constitute an assault with a deadly weapon (*People* v. *McCoy,* 25 Cal.2d 177, 189 [153 P.2d 315].) ■ The record establishes that after defendant challenged Godiness to a fight and the latter refused, defendant told him he was coming back; a half hour later defendant approached Godiness carrying a bow and arrow which he pointed at him. While Godiness testified that because of the darkness and "it happened so quick" he would not say exactly how defendant held the bow or in what position he was standing, he did testify that defendant was carrying something on his back and holding a bow and arrow in his hand, and "I believe he was pointing it at me. . . . The arrow." In answer to the question, "Do you know how the arrow got into your arm?" Godiness replied, "It was shot, sir." He testified further that he hit and kicked defendant to disarm him and then was shot; in response to why he hit defendant, Godiness said, "Because I saw him with the weapon. He was coming like that . . . I thought I was going to get hit. That is why I hit him to take it away from him. . . . I hit him with my left. I kicked him real quick because I wanted to get rid of the weapon. Then I was shot

and I went and got a stick and took it [bow and arrow] away from him.'' The evidence clearly points to the conclusion that the arrow was indeed "pointed at" Godiness; that the bow and arrow had to be held in a firing position for the arrow to have been shot into Godiness' arm in the instant Godiness tried to disarm him; and that only the pressure of a "loaded" bow could cause the arrow to go "clean through" Godiness' arm—in one side of his body and out the other— which indicates far more force than under the circumstances could be exerted to thrust the arrow by hand into Godiness' shoulder.

In any event, defendant committed an assault with a deadly weapon when he actually shot Godiness with the arrow. On the record before us appellant's claim of self-defense was a question of fact which is foreclosed on appeal. (*People* v. *Davis,* 63 Cal.2d 648, 654 [47 Cal.Rptr. 801, 408 P.2d 129].) The trial judge was not required to, and did not accept defendant's version of what occurred (*People* v. *Zilbauer,* 44 Cal.2d 43, 48-49 [279 P.2d 534]; *People* v. *Eggers,* 30 Cal.2d 676, 686 [185 P.2d 1]); he was unimpressed with the verity of his testimony and rejected defendant's assertion that around 4 a.m. he returned to Godiness' residence because he wanted to sell him the bow and arrows, and when attacked by Godiness, in self-defense thrust the arrow by hand into his shoulder. The evidence shows that defendant carried the loaded bow with the arrow pointed at Godiness. ▮ Because of the earlier challenge and the fact that defendant was "coming like that" with the bow and arrow, Godiness was justified in his fear of imminent danger and his belief that it was necessary to disarm him to protect himself. The record points to defendant as either an actual or apparent aggressor. Justification does not depend upon the existence of actual danger but on appearances. ▮ In order that a person may avail himself of the right of self-defense it is sufficient that the appearance of his assailant be such as to arouse in his mind, as a reasonable man, a belief that his assailant was about to commit great bodily injury on him. (*People* v. *Jackson,* 233 Cal.App.2d 639, 641 [43 Cal.Rptr. 817]; *People* v. *Collins,* 189 Cal.App.2d 575, 588 [11 Cal.Rptr. 504].)
▮ Godiness was under no duty to retreat; in the exercise of his right of self-defense he could stand his ground and defend himself by the use of all force and means apparently necessary. (*People* v. *Collins,* 189 Cal.App.2d 575, 588 [11 Cal. Rptr. 504]; *People* v. *Dawson,* 88 Cal.App.2d 85, 95 [198 P.2d 338]; see also *People* v. *Holt,* 25 Cal.2d 59, 63 [153 P.2d

21].) Under the circumstances here defendant could not justify his shooting Godiness as self-defense unless he "really and in good faith [had] endeavored to decline any further struggle" before the assault. (§ 197 subd. 3, Pen. Code.) To do this he must have removed the necessity, actual or apparent, for Godiness to defend himself against his conduct. A man has not the right to provoke a quarrel, go to it armed, take advantage of it and then convert his adversary's lawful efforts to protect himself into grounds for further aggression against him under the guise of self-defense. (*People* v. *Holt*, 25 Cal.2d 59, 66 [153 P.2d 21]; *People* v. *Hecker*, 109 Cal. 451, 463-465 [42 P. 307, 30 L.R.A. 403]; *People* v. *Button*, 106 Cal. 628, 632 [39 P. 1073, 46 Am.St. Rep. 259, 28 L.R.A. 591].) Godiness consistently testified that in hitting and kicking defendant he was trying to disarm him and that defendant at all times remained on his feet. The only reasonable conclusion is that defendant neither abandoned the affray nor removed Godiness' actual or apparent need to protect himself. The trial judge found, and the evidence supports the finding, that after an argument and defendant's challenge to fight he went back with the bow and arrow with the intent to commit an assault on Godiness and in fact carried out this intention while Godiness was trying to disarm him to protect himself, by shooting the arrow from the bow with such force as to send it through his body.

Even if it can be said that defendant acted in self-defense, his use of force was excessive. It is readily apparent that in Godiness' efforts to disarm defendant, his actions did not justify use of a weapon that had a high potential for inflicting a mortal wound. (*People* v. *Alexander*, 1 Cal.App.2d 570, 571 [37 P.2d 125].) The use of excessive force destroys the justification for the act, however, the question whether there was such an excess is ordinarily one of fact for the trier. (*People* v. *Young*, 214 Cal.App.2d 641, 646 [29 Cal.Rptr. 595]; *People* v. *Bates*, 256 Cal.App.2d 935, 939 [64 Cal.Rptr. 575].) While it does not appear from the record that the use of excessive force "to defend himself" was the basis upon which defendant was convicted, the evidence shows that Godiness hit defendant then gave him a quick kick which apparently was ineffective for he testified, "I never dented [defendant] at all. He stood up and he never went down."

The judgment is affirmed.

Fourt, Acting P. J., and Thompson, J., concurred.